Moncure, P.,
delivered the opinion of the court.
This is a writ of ei’ror to a judgment of the Hustings court of the city of Richmond, convicting the plaintiff in error of murder in the first degree, and sentencing him to be hung therefor. There is but one assignment of error in the case; and that is, the admission by the court of certain confessions set out in the bill of exceptions, as evidence against the prisoner. A like confession, previously made to another person (Hulee) had been excluded by the court, no doubt because it was obtained by á temporal inducement — by a promise or hope of favor held out to the prisoner, in respect of his escape from the charge against him, by a person in authority, in the meaning of the rule of law on this subject. And the only question is, whether the subsequent confessions admitted by the court were produced by the same motive which is supposed to have produced the first; or whether the court was justified in believing, from the length of time intervening, or from proper warning of the consequences of confession, or from other circumstances, that the delusive hopes, under the influence of which the original confession is supposed to have been obtained, were entirely dispelled. In the absence of auy such circumstances, the influence of the motive proved to have been offered will be presumed to continue and to have produced the subsequent confessions, unless the contrary is shown by clear evidence. Thompson's case, 20 Gratt. 724; 2 Russ. on Crimes, 838; Greenl. Ev. 257. But the contrary may be shown by clear evidence, and the subsequent confessions ai’e in that case admissible. The only question is, whether the contrary is so shown in this case?
The confession was made to Hulee on the morning of, and before the examination of the prisoner before the *641 police justice. The subsequent confessions were made on the morning when the prisoner was brought to jail, after liis examination before the police justice. It does not appear that he was carried to jail on the same day of his examination, though he no doubt was. So that there must have been but a short interval of time, perhaps less than a day, between his first and last confessions.
The statement in the bill of exceptions in regard to the last confessions is, that after the first confession was ruled out “the Commonwealth inü’oduced a witness, one Charles Jones, a colored man, who is cook at the jail, who testified that on the morning when prisoner was brought to jail witness asked the officer who had just brought him to jail, one Michaels, what prisoner was there for; to which the officer replied, for the murder of Mary Holmes, and he believed he had confessed it; to which witness said: ‘ I reckon not; he certainly wouldn’t be such a fool as to confess it.’ The officer said, ‘Yes, and he wrould do it now if I would let him; ’ and thereupon the prisoner said: ‘Yes, I did it.’ The officer, Michaels, who took the prisoner to jail, stated that the prisoner seemed to be frightened and trembling while the officer was taking him to jail, and seemed to be agitated when he got to the jail; he was near by when prisoner and Jones were talking; did not hear his confession; paid no attention to the conversation between them. And thereupon the Commonwealth introduced another witness, Lucy Kinney, a colored woman, who testified that she was an inmate of the jail, being detained there for nonpayment of a fine; that she knew Horace Venable well, and knew deceased also; that Horace Venable lived at her mother’s house for a long while; that on the morning when he was brought to the jail, after his examination before the police justice, she was washing the porch of the jail; that she spoke to prisoner and said: ‘Hello, *642 Horace; what are you doing here?’ and his reply was, that he was there for hilling Mary Holmes-, and that he was sorry that he had done it; to which witness replied that it was too late for him. to be sorry then, he ought to have thought about that before he killed her; and he then said that he was determined if he didn’t have her nobody else should; he was sorry for it now, and if ever he got out of this scrape he-would never get into another. It also appeared that between the time when the statement to Hulee (which had been ruled out) was made and the time when prisoner made the foi’egoing statements to the witnesses, Jones and Kinney, the prisoner had had counsel; that he had had his examination before the police justice and had been warned, both by counsel and by the police justice, against making any statement or confession. The testimony of the witnesses, Jones and Kinney, went to the jury without objection on the part of the prisoner’s counsel. After the examination of the witnesses on the part of the Commonwealth, and the examination of witnesses for the defence had closed, and just as the argument wras about to commence, one of the jurors asked that the witness, Charles Jones, might be recalled, and asked him to repeat his former statement, which witness did; and thereupon the prisoner, by his counsel, moved the court to exclude from the jury the whole of the said conversations that had taken place between the prisoner and Charles Jones, and between the prisoner and Lucy Kinney, which motion the court overruled; to which opinion of the court refusing to exclude the said conversations from the jury, the prisoner, by his counsel, excepted.”
"We think it clearly appears from the foregoing statement that after the prisoner made his first confession, and before he made his subsequent ones, he was duly warned against making any confession. The first confession was *643 made to a subordinate officer of the police, who advised the prisoner to employ counsel. He did employ counsel, who represented him before the police justice; and he was warned, both by his counsel and by tbe police justice, against making any statement or confession. After his examination before the police justice, and after he had received that double warning from these functionaries, whose advice ought to have been much more potential with him than a mere suggestion of a ministerial police officer, he made his subsequent confessions to persons in the jail. The terms in which the confessions were made indicate that they were true. In assigning his reason for committing the deed with which he was charged, he said, “that he was determined, if he didn’t have her, nobody else should; he was sorry for it now, and if he ever got out of this scrape he would never get into another.” A great deal of stress was laid, in the argument of the prisoner’s counsel before this court, on the fact proved by Michaels, who took the prisoner to jail, that he, “the prisoner, seemed to be frightened and trembling while the officer was taking him to jail, and seemed to be agitated when he got to the jail.” But no degree of alarm or agitation will, of itself, render confessions made during its existence inadmissible. Smith’s case, 10 Gratt. 734, is a striking instance of that fact. But, as was said there, that matter is for the consideration of the jury, and affects the credit, but not the competency of the evidence. The court below was satisfied that the subsequent confessions were voluntary, and therefore admitted them. And we think the court did not err in that respect.
"We are of opinion that there is no error in the judgment, and that it ought to be affirmed.
Judgment affirmed.