Howard Mayle, Palace Parsons and Ted Dalton were jointly indicted in the circuit court of Taylor county on the charge of breaking and entering a certain chicken house and stealing therefrom twenty-one chickens. Mayle, defendant herein, who was tried separately, convicted and sentenced to confinement in the penitentiary, brings error. *Page 682 
According to the State's theory, which is amply supported by her witnesses and a written confession, it appears that the defendant and his companions, having a market in view, set about to secure a number of chickens. After visiting a nearby dwelling, the occupants of which were temporarily absent, and procuring several sacks, the trio proceeded to a chicken house on a neighboring farm, tore out a screen and removed and cut off the heads of twenty-one chickens — seven being placed in each of two sacks and six in a third. The chickens were taken to the dwelling heretofore mentioned and dressed for market. Early the following morning the boys started to Grafton. After passing the property on which the chicken house, from which the chickens had been taken, was located, they hid their produce along the river bank, and went into town to see if their prospective customer still wanted it. Parsons then took a taxi back for the chickens; he was stopped by officers, who had been called to the scene on the discovery of the theft, and asked where he was going. He then took them to the point where the chickens were concealed. Soon thereafter defendant and Dalton were arrested in Grafton. Sometime during the afternoon the defendant confessed to the theft, and later the confession was written out on a typewriter, sworn to and signed by the defendant. On the trial, however, defendant offered evidence to the effect that he had killed four of his own chickens and had gone over to spend the night with Parsons, who killed sixteen of his; and that, on the following morning, the three had left for Grafton to sell the same.
The chief assignment of error goes to the introduction of the written confession, which corroborates the State's evidence in every particular. Whether it was properly admitted becomes the crux of the case.
The general rule is that a confession cannot be given in evidence if it appears that it was obtained from the party by some inducement of a worldly or temporal character in the nature of a threat or promise of benefit, held out to him in respect to his escape from the consequences of the offense, or the mitigation of the punishment, by a person in authority, or with the apparent sanction of such a person. State v. *Page 683 Zaccario, 100 W. Va. 36, 129 S.E. 763. It devolves upon the trial court in the first instance, before admitting it, to determine whether such confession has been voluntarily made and the burden is on the state to show to the satisfaction of the court facts justifying the admission of such confession; and upon its admission the jury are then the final judges of the weight and effect that should be given such confession in connection with all other evidence in the case as to the guilt or innocence of the defendant. State v. Richards, 101 W. Va. 136,132 S.E. 375, 377. As the court said in that case: "For in the end the question of the weight and sufficiency of the evidence to sustain the truth and verity of the alleged confession passes to the jury, who become thereby the final triers of the facts and of the weight they will attach to such confessions." It is true that the prisoner has stated that he would not have made this confession if he had not been induced to do so by threats and acts of violence on the part of the officers. The officers all unite in denying the use of any threats or violence. Both court and jury have determined this fact contrary to the prisoner's contention. The fact that such confession was made to one in authority, does not of itself, make the confession inadmissible, although this fact may be considered in determining whether or not it was voluntarily made. While denying that any force was used by the officers, or that they had held out any inducement to the prisoner, one of the members of the State Department of Public Safety says that he did state to the defendant that "it was best to tell the truth". Did this render the confession inadmissible? There are authorities which in a measure so hold because of the presumption that, under all the circumstances of the particular case, the party in making them was influenced by the admonition made. However, there is a great line of cases holding to the contrary. The latter proceed on the theory that where the prisoner is advised to tell the truth, it cannot be supposed that he would be induced thereby to confess to a crime of which he is really innocent. The real question being whether there has been any threat or promise of such nature that the prisoner would likely tell an untruth for fear of the threat, or hope of profit from the promise. State *Page 684 
v. Goldizen, 93 W. Va. 328, 336, 116 S.E. 687. So, if what is said to the prisoner has no tendency to induce him to make an untrue statement, his confession is admissible. 3 Russ. on Cr. (5th Ed.) 442. But as we have shown, each case must be viewed in its own setting to determine the question. For this reason it would serve no useful purpose to attempt to review or reconcile the cases, pro and con, if it were possible.
The words heretofore quoted were used in a conference had with the prisoner in the office of the sheriff, at which there were present the deputy sheriff, member of the state police, and the principal of the schools of Flemington. The principal wrote the prisoner's statement down on a typewriter. All testify that the prisoner willingly made the statement. After it was typed, the prisoner went with the state policeman and the deputy sheriff to the office of the clerk of the circuit court to sign the statement and acknowledge it. The clerk testifies that he read the statement to the defendant, and thereupon said to him, "I wonder why you want to do such a thing as this?" to which the prisoner replied: "It is the truth." Whereupon the clerk, after assuring the prisoner that his statement could be used against him at the trial, added another clause to it to the effect that the confession in regard to the matters therein related was made upon his (prisoner's) own free will and without offers of any kind from the state officials, and attested the paper. It is to be noted that the clause immediately preceding the attestation supplied by the clerk says: "This is my own free will confession knowing that it can be used against me in prosecution." A prominent member of the Taylor county bar, who happened to be in the office at the time, corroborates the testimony of the clerk in every particular. Both say that the prisoner appeared to be in a good humor and not at all nervous. This subsequent action on the defendant's part has a significant bearing on the question of whether the confession was voluntary. For the rule has been well stated: "That although an original confession may have been obtained by improper means, yet subsequent confessions of the same or like facts may be admitted, if the court believes, from the length of time intervening, or from proper warning of the *Page 685 
consequences of the confession, or from other circumstances, that the delusive hopes or fears, under the influence of which the original confession was obtained, were entirely dispelled." 2 Russel on Crimes, 838; Greenleaf Ev. 257; Com. v. Thompson, 20 Gratt. 731, approved in Venable case, 24 Gratt. 639. See note to Schwartz case, 27 Gratt. 1025. To same effect Moore v.Com., 2 Leigh 701. No general proposition can be predicated concerning the weight and degree of credit to be given to a confession; because this must depend upon the age, character and mental capacity of the prisoner, and the share of education which he has enjoyed, and all the surrounding circumstances which attended it. 1 Greenl. Ev., sec. 215.
We realize that the prisoner here was a youth of seventeen or eighteen years, and that he was without counsel or advice. For this reason the court has given to the evidence surrounding the confession painstaking consideration. But on the question of its admissibility it comes here on a decision adverse to the prisoner. The trial court has a wide discretion as to the admission of confessions. Ordinarily this discretion will not be disturbed on review. And, in any event, it will not be disturbed unless we can say that the trial court was plainly wrong. We cannot say so.
The foregoing conclusion necessarily upholds the verdict unless there were errors of procedure reversible in their nature committed by the court. The indictment is assailed as insufficient. It contains three counts. The first is the usual count for burglary. Its form and substance have been approved many times by this Court as sufficient. One count being good and the motion to quash, as well as the verdict, being general, it becomes unnecessary to examine the other two counts.Moody v. State, 1 W. Va. 337; Kirk v. Com., 9 Leigh (Va.) 627.
Another assignment of error goes to the admission of the testimony of the state witnesses regarding the finding of the dressed chickens along the river bank, at the instance of the co-defendant Parsons. Of course this was in the absence of the defendant Mayle. This testimony only served to connect the state's narrative of the case and did not fall within the *Page 686 
ban of the rule that confessions and declarations of a co-defendant, after the commission of the crime, and not in the presence of the accused, are inadmissible in evidence, unless a part of the res gestae. State v. McCoy, 61 W. Va. 258,57 S.E. 294. No confession or declaration of Parsons went to the jury implicating the defendant Mayle in the robbery.
The remaining assignments of errors relate to the instructions. The jury were fully instructed in every phase of the law of the case by fourteen instructions given at the instance of the defendant. The four refused were practically incorporated in those given, and the defendant suffered no prejudice by their rejection. The state requested sixteen instructions, all of which were read to the jury. Our only criticism of them goes alone to their numerosity. They are not open to the objection that they mis-state the law. The prisoner was ably defended, a fair trial accorded him, and we see no reason for disturbing the verdict.
Affirmed.