[No. 2802-2.   Division Two.   May 10, 1978.]

THE STATE OF WASHINGTON, *Respondent,* v. RICHARD
OTTO SETZER, *Appellant.*

*Kenneth Johnson,* for appellant.

*Jeremy Randolph, Prosecuting Attorney,* for respondent.

PETRIE, J.—Richard Otto Setzer was convicted by jury verdict of second–degree burglary. The trial court subsequently determined that he was a habitual criminal and sentenced him to life imprisonment. Defendant appeals the underlying conviction, challenging the admission of his written confession as violative of the fifth amendment to the United States Constitution. Defendant alleges that the confession was induced by police promises and was therefore constitutionally inadmissible even for the limited purpose of impeachment. We agree and reverse the judgment and sentence.

The facts surrounding the felony conviction and those which precipitated the confession may be summarized as follows. On November 24, 1976, two members of the Centralia Police Department responded to a silent alarm at the Churchill Glove Factory and apprehended the defendant therein. He was immediately advised of his constitutional rights and elected not to make a statement. An impound inventory of defendant's car revealed evidence linking him with the burglary of Countryman Motors, a prior unresolved case. Two days later Detectives Stoner and Teitzel confronted the defendant, who was still in custody and unrepresented by counsel. Detective Stoner repeated the *Miranda* rights and advised defendant that, if he confessed to the Churchill burglary, the prosecutor would not charge him with the Countryman burglary. The defendant, fully aware of his prior record of felonies committed in other states and apparently wary of the habitual criminal statute, RCW 9.92.090, expressed a desire to remain silent.

Detective Stoner then explained to defendant that his caution was unfounded. Stoner advised Setzer that, as he understood the law, "it's necessary to prove two prior convictions in the State of Washington before he could be charged with the habitual." When Setzer was asked at the omnibus hearing who started the discussion about habitual criminal charges, he replied:

> I believe that I had made the statement that I had probably better not saying anything because of the habitual criminal deal and Sgt. Stoner informed me that any way I looked at it I was going to be doing time anyway and that they had to have two prior Washington convictions.

The defendant thereupon accepted the detective's offer of immunity for the Countryman burglary, confessed to it, and made a written confession to the Churchill burglary. In the order on omnibus hearing, the court noted as a disputed fact that

> the defendant represented in testimony that his discussion with the officers concerning a possible Habitual Criminal proceeding effected [sic] whether or not he would make a statement.

The court failed to make a finding whether the confession was a product of the promise, but nevertheless concluded that the defendant's confession could be offered "as voluntary admissions of the defendant subsequent to appropriate and adequate advisories of constitutional rights."

At trial the prosecutor, consistent with his open avowal at the omnibus hearing, refrained from using the confession in his case in chief; but apparently he became incensed by defendant's inconsistent direct testimony and introduced the confession to impeach the defendant's credibility. Defendant was convicted of second–degree burglary and was subsequently held to be a habitual criminal on the basis of an amended supplemental information filed by the State, coupled with proof of four out–of–state felony convictions.

■■ We attach great weight to the trial court's findings of fact, particularly when they are derived from disputed testimony. Nevertheless, the constitutional nature of defendant's challenge and the court's failure to determine precisely whether or not the confession was a product of Detective Stoner's promise, compels us to independently review the record to determine whether defendant's confession was voluntary and admissible. *McNear v. Rhay,* 65 Wn.2d 530, 398 P.2d 732 (1965). Furthermore, we are constrained to note that our independent analysis of the record in this case is not precluded by the verdict of the jury to which the issue of voluntariness was submitted. The jury was instructed, in effect, that only confessions produced by duress or threats were involuntary. They were given no instruction as to confessions induced by *promises.* Thus, the jury was given an incomplete statement of the law, and we will not assume that it reliably found the facts against the accused. *Jackson v. Denno,* 378 U.S. 368, 386–87, 12 L. Ed. 2d 908, 84 S. Ct. 1774, 1786, 1 A.L.R.3d 1205 (1964).

The admissibility of a confession depends upon its free and voluntary nature; "that is, [it] must not be extracted by any sort of threats or violence, nor obtained by *any direct or implied promises, however slight,* nor by the exertion of any improper influence." (Italics ours.) *Bram v. United States,* 168 U.S. 532, 542–43, 42 L. Ed. 568, 18 S. Ct. 183, 187 (1897). The Fifth Amendment proscription against self–incrimination, inherent in involuntary confessions, has become obligatory upon the states, *Malloy v. Hogan,* 378 U.S. 1, 12 L. Ed. 2d 653, 84 S. Ct. 1489 (1964) and therefore we are bound by the above standard.

After a careful review of the record we are convinced that the officer's promise to forego prosecution on the Countryman burglary was not an abstract declaration of prosecutorial policy; nor did the officer's discussion, implying that defendant could avoid the recidivist statute, have "only an attenuated causal connection with the confession." *See Grades v. Boles,* 398 F.2d 409, 412 (4th Cir. 1968). The impact of the offer must be determined in relation to

defendant's subjective consideration of the promise. *Grades v. Boles, supra.*

Consistent with our holding in *State v. Riley,* 19 Wn. App. 289, 576 P.2d 1311 (1978), we are not convinced that the promise of leniency standing alone invalidated the confession. However, when the promise is viewed in light of all the surrounding circumstances, the magnitude of its impact is obvious. For 2 days the defendant exercised his right to remain silent, then he suddenly confessed after Detective Stoner recited the prosecutor's offer of immunity and assured defendant that *two prior Washington felonies* were necessary before he could be classified a habitual criminal. Inferentially, defendant was told that unless he was convicted of both the Churchill and Countryman burglaries he could not be declared a habitual criminal, absent the requisite number of prior felony convictions. Furthermore, defendant's initial reluctance to discuss the Countryman burglary was prompted by his desire not to be charged as a habitual criminal; and his initiation of the discussion concerning this potential status highlights his awareness of the nature and significance of the recidivist statute. The spontaneity of the confession and the defendant's awareness of the statute's ramifications, added to the offer of immunity, distinguishes this confession from a "purge of conscience." *See State v. Riley, supra* at 299.

■ An examination of all the facts fails to reveal any countervailing factors to overcome the State's burden to prove that the confession was untainted by coercive influence. *See State v. Woods,* 3 Wn. App. 691, 477 P.2d 182 (1970). Although we recognize that defendant was adequately warned of his so-called *Miranda* rights during his pretrial incarceration, compliance with procedural due process does not vitiate the rules traditionally applied in this state to determine the voluntariness of a confession. *State v. Davis,* 73 Wn.2d 271, 284–85, 438 P.2d 185 (1968); *accord, State v. McDonald,* 89 Wn.2d 256, 571 P.2d 930 (1977). We cannot conclude, under these circumstances,

that the State has met its burden to establish that Setzer's statement was obtained free of any coercive influence.

Next, we must determine whether admitting the confession solely for the purpose of impeaching defendant's testimony was reversible error. The State asserts that *Harris v. New York,* 401 U.S. 222, 28 L. Ed. 2d 1, 91 S. Ct. 643 (1971) holds that an otherwise inadmissible confession may be used for the limited purpose of impeachment, provided that its trustworthiness satisfies legal standards. *See also State v. Davis,* 82 Wn.2d 790, 793, 514 P.2d 149 (1973). More recently, in *Oregon v. Hass,* 420 U.S. 714, 43 L. Ed. 2d 570, 95 S. Ct. 1215 (1975), the court held that because a defendant did not allege coercion or any other factors that would compromise the legal trustworthiness of an inculpatory statement, it was admissible for impeachment purposes. In the case at bench, the State contends that defendant's declaration against his own penal interest evidences the trustworthiness of his confession; and, therefore, based on the rationale of *Harris* and *Hass,* the confession was admissible for impeachment purposes.

That position is untenable. When the Supreme Court sanctioned impeachment of the defendant by otherwise inadmissible statements, it referred to statements extracted in violation of *Miranda v. Arizona,* 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A.L.R.3d 974 (1966). *Rivera v. Warden,* 431 F. Supp. 1201, 1205 (E.D.N.Y. 1977); *United States v. Smith,* 538 F.2d 1359, 1362–63 (9th Cir. 1976). However, the case at bench does not involve *Miranda* violations. Here the key is trustworthiness. Trustworthiness, in turn, depends on voluntariness. *Harris v. New York, supra* at 224. *See State v. Joseph,* 10 Wn. App. 827, 520 P.2d 635 (1974). Although the prosecution may *threaten use* of the habitual criminal statute if an accused does not plead guilty, *Bordenkircher v. Hayes,* 434 U.S. 357, 54 L. Ed. 2d 604, 98 S. Ct. 663 (1978); it cannot, *as an inducement to obtain a confession,* thrust before an accused the false expectation that by confessing he becomes immune to enhanced punishment. A confession obtained in

that manner is inherently suspect and necessarily untrustworthy. *See Lutton v. Smith,* 8 Wn. App. 822, 509 P.2d 58 (1973).

We hold that an involuntarily obtained confession, inadmissible as in the case at bench to establish the State's case in chief, is also inadmissible to impeach the defendant by demonstrating that he has previously given a statement inconsistent with his trial testimony. *Accord, Upchurch v. State,* 64 Wis. 2d 553, 219 N.W.2d 363 (1974). *See generally* Annot., 9 A.L.R. 1358 (1920).

█ Notwithstanding the overwhelming evidence in the record which otherwise tends to support the conviction, we cannot invoke the harmless error doctrine. *Chapman v. California,* 386 U.S. 18, 17 L. Ed. 2d 705, 87 S. Ct. 824, 24 A.L.R.3d 1065 (1967); *Payne v. Arkansas,* 356 U.S. 560, 2 L. Ed. 2d 975, 78 S. Ct. 844 (1958). Accordingly, the judgment is reversed and this cause is remanded for a new trial consistent with this opinion.

PEARSON, C.J., and JOHNSON, J. Pro Tem., concur.

Reconsideration denied June 8, 1978.

Review denied by Supreme Court November 3, 1978.