STATE OF WEST VIRGINIA

*v.*

DANA PERSINGER

(No. 14630)

Decided January 19, 1982

122

*Edwin C. Runner*, for plaintiff in error.

*Chauncey H. Browning,* Attorney General, *Gregory W. Bailey,* Deputy Attorney General, *James V. Cann,* Special Assistant Attorney General, for defendant in error.

MILLER, CHIEF JUSTICE:

The defendant, Dana Persinger, was convicted by a jury of third degree sexual assault in the Circuit Court of Preston County in June of 1977. His primary grounds of error are a constitutional challenge to our rape shield statute, W. Va. Code, 61-8B-12, and the voluntariness of his confession. Other errors involve evidentiary points and the sufficiency of the indictment.

On April 21, 1977, the victim was living with her cousin, the defendant, and his wife and infant child in Preston County, West Virginia. The victim testified that she had lived with the Persingers for approximately three weeks. On the evening of the alleged offense, the victim and the defendant were the only people present in the house. The defendant after making a series of advances toward the victim who was in her bedroom threatened to use a belt on her. The defendant then proceeded to have sexual intercourse with the victim. At the time of the offense, the victim was fourteen years old and the defendant was twenty-one.

After the offense was completed, the victim fled from the Persinger's home to that of a neighbor, Gladys Losh. The neighbor testified that the victim was upset, nervous, and complained that her stomach hurt and that she had a headache. The victim told the neighbor that the defendant had attacked and hurt her, and had warned her that if she told anybody of the offense he would kill her. A second neighbor, who was summoned to the Losh residence, testified that the victim said she had been raped.

Shortly thereafter the defendant's mother-in-law was summoned by the neighbors, and she transported the victim to the Garrett County Memorial Hospital in nearby Oakland, Maryland, where she was examined by a physician. This examination revealed bruising around both

breasts and abrasion and redness around the opening of the vagina. In addition a yellow exudate was found in the vagina, which laboratory tests showed to contain sperm. Later that evening the defendant's mother-in-law telephoned a complaint to the Preston County Sheriff's Department.

The defendant was arrested at his home at approximately 10:15 on the evening of April 22, 1977, by a Deputy Sheriff and a Terra Alta City Policeman. Upon arrest the police officers did not take the defendant before a magistrate. Neither did they take him to the Preston County Jail. Rather they transported the defendant to the Terra Alta City Hall for questioning. They arrived at approximately 10:48 p.m., and after the defendant had signed a waiver of rights form, he was questioned about the alleged sexual assault.

As a result of the questioning, the defendant made two statements both of which were tape recorded. The first statement was taken between 12:03 and 12:22 a.m. In it the defendant denied committing the offense. The second statement was taken between 1:39 and 1:48 a.m. In it, the defendant said that he had lied in the first statement, and that he had sexual intercourse with the victim. The defendant was then transported to the Preston County Jail, where he was booked at approximately 2:16 a.m.

At trial, the defendant was not permitted to cross-examine prosecution witnesses on the issue of the victim's past sexual conduct because of the prohibition contained in W. Va. Code, 61-8B-12. On the basis of evidence presented, the jury found the defendant guilty of third degree sexual assault.

I.

The defendant first argues that our rape shield statute, W. Va. Code, 61-8B-12,[1] is unconstitutional because it

---

[1] W. Va. Code, 61-8B-12, provides:

"(a) In any prosecution under this article in which the victim's lack of consent is based solely on his incapacity to consent because he was below a critical age, evidence of specific

infringes upon his right to confront the witness against him as guaranteed by the Sixth Amendment to the United States Constitution and Section 14 of Article III of the West Virginia Constitution.[2] The defendant sought to cross-examine the victim about her past sexual behavior. The statute provides basically that the defendant may introduce evidence of the prior sexual conduct with others if the victim makes such conduct an issue in the trial or of the prior sexual history of the victim with the defendant on the issue of consent.

There is no dispute that the victim did not make her prior sexual conduct with third parties an issue at the trial. In *State v. Green*, 163 W. Va. 681, 260 S.E.2d 257, 261 (1979), we held our rape shield statute constitutional stating that "[a] rape victim's previous sexual conduct with other persons has very little probative value about her consent to intercourse with a particular person at a particular time. That portion of the law which prohibits such evidence is constitutional." We did, however, recognize in *Green* that there may be limited instances where the broad probibition against evidence of the victim's prior sexual conduct with persons other than the accused may deny a defendant his constitutional right to effectively confront his accusers:

instances of the victim's sexual conduct, opinion evidence of the victim's sexual conduct and reputation evidence of the victim's sexual conduct shall not be admissible. In any other prosecution under this article, evidence of specific instances of the victim's prior sexual conduct with the defendant shall be admissible on the issue of consent: Provided, that such evidence heard first out of the presence of the jury is found by the judge to be relevant.

"(b) In any prosecution under this article evidence of specific instances of the victim's sexual conduct with persons other than the defendant, opinion evidence of the victim's sexual conduct and reputation evidence of the victim's sexual conduct shall not be admissible: Provided, that such evidence shall be admissible solely for the purpose of impeaching credibility, if the victim first makes his previous sexual conduct an issue in the trial by introducing evidence with respect thereto."

[2] As to the scope of the right of confrontation, *see State v. Harman*, ___ W. Va. ___, 270 S.E.2d 146, 153 (1980); *State v. Haverty*, ___ W. Va. ___, 267 S.E.2d 727, 731 (1980).

"[T]here may be unusual cases where the proba-
tive value is precisely demonstrated, and out-
weighs the prejudicial effect of the testimony. . . .
[S]uch evidence, that is specifically, directly re-
lated to the act for which a defendant stands
charged, must be of a quality that its admission is
necessary to prevent manifest injustice and
therefore outweigh the State's interest in protect-
ing persons who have been sexually abused, from
attempts at besmirchment of their character by
ones who have trespassed upon their bodies."
*Green*, at 264.

We recognized that an *in camera* hearing is the appropri-
ate procedure to determine whether evidence of a victim's
past sexual behavior is relevant and material to an
accused's consent defense. In light of the judicially-
sanctioned procedures set out in *Green*, the provisions of
W. Va. Code, 61-8B-12, limiting the defendant's right to
present evidence of the victim's prior sexual conduct are
constitutional under the confrontation clause of the Sixth
Amendment to the United States Constitution and Sec-
tion 14 of Article III of the West Virginia Constitution.
However, *Green* involved a case where consent was a
relevant issue and the question was whether evidence of
the victim's prior sexual relations with third parties was
admissible on the consent issue, we held it was not.

Here, consent is not a defense to the third degree sexual
assault with which the defendant was charged.[3] At the
time of the act of which the victim complains she was

----

[3] Our third degree sexual assault statute, W. Va. Code, 61-8B-5,
provides in pertinent part:
  "(a) A person is guilty of sexual assault in the third degree
  when:

  *  *  *  *  *  *  *  *  *

  "(2) Being sixteen years old or more, he engages in sexual
  intercourse with another person who:
  "(i) Is incapable of consent because he is less than sixteen years
  old; and
  "(ii) Is at least four years younger than the defendant."
Furthermore, W. Va. Code, 61-8B-2, provides in pertinent part:
  "(c) A person is deemed incapable of consent when he is
  "(1) Less than sixteen years old; . . ."

fourteen years of age, and the defendant was twenty-one years of age. Thus, the victim, being less than sixteen years of age and at least four years younger than the defendant, is deemed incapable of consent by statute.[4] This holding is compatible with cases decided under our prior sexual offense statute, W. Va. Code, 61-2-15, that consent was not a defense to the charge of statutory rape where the victim was under the age of sixteen. *State v. Adkins*, 106 W. Va. 658, 146 S.E. 732 (1929); *State v. Tippins*, 91 W. Va. 504, 113 S.E. 751 (1922).

## II.

The defendant also claims error in the introduction of his tape recorded confession. We have recognized that "[i]t is the mandatory duty of a trial court, whether requested or not, to hear the evidence and determine in the first instance, out of the presence of the jury, the voluntariness of an oral or written confession by an accused person prior to admitting the same into evidence." Syllabus Point 1, *State v. Fortner*, 150 W. Va. 571, 148 S.E.2d 669 (1966), *overruled in part, State ex rel. White v. Mohn*, ___ W. Va. ___, 283 S.E.2d 914 (1981).[5]

We have also stated in Syllabus Point 5 of *State v. Starr*, 158 W. Va. 905, 216 S.E.2d 242 (1975), that:

---

[4] Part of the defense evidence was not vouched into the record so as to this area we are unable to determine its validity. We have stated in Syllabus Point 4 of *State v. Rissler*, ___ W. Va. ___, 270 S.E.2d 778 (1980), that:

"The purpose of vouching the record is to place upon the record what the excluded evidence would have proved in order that the appellate court may properly evaluate the correctness of the trial court's ruling excluding it."

[5] *White, supra*, overruled a portion of Syllabus Point 1 of *Fortner* not quoted above which stated that the failure to hold an *in camera* hearing "constitutes reversible error." In *White*, we recognized that the failure to hold a voluntariness hearing would result in a remand to hold such hearing. If statements are found to be involuntary, the conviction will stand. If they are found to be involuntary, the convictions must then be set aside unless the error is harmless beyond a reasonable doubt. Syllabus Point 1, *State ex rel. White v. Mohn, supra*; Syllabus Point 5, *State v. Clawson*, ___ W. Va. ___, 270 S.E.2d 659 (1980).

"The State must prove, at least by a preponderance of the evidence, that, confessions or statements of an accused which amount to admissions of part or all of an offense were voluntary before such may be admitted into the evidence of a criminal case."

*See also,* Syllabus Point 1, *State v. Vance,* 162 W. Va. 467, 250 S.E.2d 146 (1978); *State v. Rissler,* ___ W. Va. ___, 270 S.E.2d 778 (1980); *State v. Milam,* 163 W. Va. 752, 260 S.E.2d 295 (1979); *State v. Laws,* 162 W. Va. 359, 251 S.E.2d 769 (1978).

It is also clear from Syllabus Point 7 of *State v. Plantz,* 155 W. Va. 24, 180 S.E.2d 614 (1971), that part of the State's burden is to prove that the defendant prior to the giving of a confession was given the rights constitutionally mandated in *Miranda v. Arizona,* 384 U.S. 436, 16 L.Ed.2d 694, 86 S.Ct. 1602 (1966).[6] However, the issue of voluntariness is not limited merely to an inquiry as to whether the *Miranda* rights have been given.

In Syllabus Point 1 of *State v. Milam,* 163 W. Va. 752, 260 S.E.2d 295 (1979), we recognized the principle laid down in *Blackburn v. Alabama,* 361 U.S. 199, 4 L.Ed.2d 242, 80 S.Ct. 274 (1960), that a defendant could challenge the voluntariness of his confession by showing his insanity at the time he gave it.[7] In a related vein, we held in *State v. Hamric,*

---

[6] Syllabus Point 7 of *State v. Plantz, supra,* states:

"A statement freely and voluntarily made by an accused while in custody or deprived of his freedom by the authorities and subjected to questioning is admissible in evidence against him if it clearly appears that such statement was freely and voluntarily made after the accused had been advised of his constitutional right to remain silent and that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney and if he can afford an attorney one will be appointed for him, and that, after he has been so advised, he knowingly and intelligently waives such rights."

[7] Syllabus Point 1 of *State v. Milam, supra,* states:

"It is error to deprive the defendant of an opportunity to produce psychiatric testimony at an *in camera* hearing to show that his confession was not voluntary because he was probably insane at the time he gave it."

160 W. Va. 673, 236 S.E.2d 247 (1977), that the voluntariness of a confession may be affected by the mental condition of the accused, who by virtue of a diminished intelligence is unable to make a knowing and intelligent waiver of her *Miranda* rights. This point was constitutionally mandated in *Davis v. North Carolina*, 384 U.S. 737, 16 L.Ed.2d 549, 86 S.Ct. 1761 (1966).

The basis for these principles springs from the traditional requirement that constitutional safeguards such as those embodied in *Miranda* cannot be waived unless there is a knowing and intelligent relinquishment of such rights. *Johnson v. Zerbst*, 304 U.S. 458, 32 L.Ed. 1461, 58 S.Ct. 1019 (1938). The United States Supreme Court has recently reaffirmed these principles in *Edwards v. Arizona*, ___ U.S. ___, 68 L.Ed.2d 378, 385, 101 S.Ct. 1880, 1883-84 (1981), where in speaking of the waiver of the right to counsel which is one of the constitutional rights embodied in *Miranda*, it said:

> "It is reasonably clear under our cases that waivers of counsel must not only be voluntary, but constitute a knowing and intelligent relinquishment or abandonment of a known right or privilege, a matter which depends in each case 'upon the particular facts and circumstances surrounding that case, including the background, experience and conduct of the accused.' Johnson v. Zerbst, 304 US 458, 464, 32 L Ed 1461, 58 S Ct 1019, 146 ALR 357 (1938)." (Citations omitted)

The interior quoted language from *Edwards* is often referred to as the totality of the circumstances surrounding the confession. Thus the voluntariness of a confession is an inquiry that must be gauged by the totality of the circumstances under which it was given including the background, experience and conduct of the accused. *See Fare v. Michael C.*, 442 U.S. 707, 61 L.Ed.2d 197, 99 S.Ct. 2560 (1979); *Clewis v. Texas*, 386 U.S. 707, 18 L.Ed.2d 423, 87 S.Ct. 1338 (1967); *Fikes v. Alabama*, 352 U.S. 191, 1 L.Ed.2d 246, 77 S.Ct. 281 (1957).

*Edwards* dealt with the situation where a defendant had elected not to waive his right to counsel. The following day police officers again met with the defendant who was in custody and had not been furnished counsel and stated they wanted to talk with him. They again gave him his *Miranda* rights whereupon he agreed to talk and gave a confession. The Supreme Court concluded that the confession was not voluntary since once the accused exercised his *Miranda* rights, the police could not make any further interrogation of him. The Court confirmed that "Miranda itself indicated that the assertion of the right to counsel was a significant event and that once exercised by the accused 'the interrogation must cease until an attorney is present.' " ____ U.S. at ____, 68 L.Ed.2d at 386, 101 S.Ct. at 1885.[8] We have followed this principle in Syllabus Point 1 of *State v. McNeal,* 162 W. Va. 550, 251 S.E.2d 484 (1978):

> "Once a suspect in custody has expressed his clear, unequivocal desire to be represented by counsel, the police must deal with him as if he is thus represented. Thereafter, it is improper for the police to initiate any communication with the suspect other than through his legal representative, even for the limited purpose of seeking to persuade him to reconsider his decision on the presence of counsel."

In *State v. Clawson,* ____ W. Va. ____, 270 S.E.2d 659 (1980), and *State v. Bradley,* 163 W. Va. 148, 255 S.E.2d 356

---

[8] Earlier in *Edwards* the Court had made this statement:
"[T]he Court has strongly indicated that additional safeguards are necessary when the accused asks for counsel; and we now hold that when an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights. We further hold that an accused, such as Edwards, having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges or conversations with the police." ____ U.S. at ____, 68 L.Ed.2d at 385, 101 S.Ct. at 1884. (Footnote omitted)

(1979),[9] we specifically recognized that there was a difference in the quantum of proof that the State had to produce between the showing of an initial waiver of *Miranda* rights and a subsequent waiver of the rights when the accused has initially stated he does not wish to waive his rights. We gave this reason in *Clawson*, at 667-68, for the heavier burden:

> "It is apparent that where the evidence is undisputed that the defendant sought or obtained his right to counsel and the State obtains a confession after this admitted fact, the State's burden to show a subsequent waiver in the face of the defendant's acknowledged assertion of his right becomes exceedingly heavy. This burden is much more onerous than in the case where the initial issue is whether, after receiving his *Miranda* warning, the defendant voluntarily and intelligently waived his right.

> "The reason for this distinction rests on the basic concept of waiver of the *Miranda* rights. It is recognized in *Butler [v. North Carolina*, 441 U.S. 369, 60 L.Ed.2d 286, 99 S.Ct. 1755 (1979)] and other cases that a waiver cannot be inferred from the defendant's silence in response to his *Miranda* warning. If this is true on the initial question of waiver, it must follow that where the defendant has initially asserted his right to counsel, then a subsequent waiver is even more difficult to establish, particularly in view of *Miranda's* prohibition against further probing or testing of the defendant's will where he has invoked his rights."

Moreover, independent of the *Miranda* safeguard, the United States Supreme Court has held that a confession

---

[9] Syllabus Points 2 and 3 of *Bradley* state:

"1. When a criminal defendant requests counsel, it is the duty of those in whose custody he is, to secure counsel for the accused within a reasonable time. In the interim, no interrogation shall be conducted, under any guise or by any artifice. W.Va. Const. Art. 3, § 5 and W.Va. Const. Art. 3, § 14.

"2. If after requesting counsel an accused shall recant this request, there is a heavy burden upon the state to prove his waiver of right to counsel."

can be rendered inadmissible under the Fourth Amendment by virtue of an unlawful arrest where the State cannot demonstrate that there has been a clear break in the causal connection between the illegal arrest and the confession. *Brown v. Illinois,* 472 U.S. 590, 601-03, 45 L.Ed.2d 416, 426-27, 95 S.Ct. 2254, 2261 (1975). We have also adopted this principle. *E.g., State v. Moore,* ___ W. Va. ___, 272 S.E.2d 804 (1980); Syllabus Point 3, *State v. Canby,* 162 W. Va. 666, 252 S.E.2d 164 (1979).

In the same Fourth Amendment vein, the United States Supreme Court has also held that where the police without probable cause to arrest take an individual into custody and interrogate him that a confession resulting from such interrogation, even though preceded by a waiver of *Miranda* rights, will be held invalid unless there is a clear break in the causal chain between the illegal detention and the confession. *Dunaway v. New York,* 442 U.S. 200, 60 L.Ed.2d 824, 99 S.Ct. 2248 (1979). We have followed this rule in *State v. Stanley,* ___ W. Va. ___, 284 S.E.2d 367 (1981).

Beyond these areas, the United States Supreme Court has also recognized that apart from any constitutional grounds there is a procedural requirement that a person who has been arrested be taken before a magistrate without unreasonable delay. This principle was first enunciated in *McNabb v. United States,* 318 U.S. 332, 87 L.Ed.2d 819, 63 S.Ct. 608 (1942), and later confirmed in *Mallory v. United States,* 354 U.S. 449, 452-53, 1 L.Ed.2d 1479, 1482, 77 S.Ct. 1356, ___ (1957),[10] where the Court quoted this portion from *McNabb:*

---

[10] It is clear that both *McNabb* and *Mallory* based their holdings on Rule 5(a) of the Rules of Criminal Procedure which provides in pertinent part:

"An officer making an arrest under a warrant issued upon a complaint or any person making an arrest without a warrant shall take the arrested person without unnecessary delay before the nearest available commissioner ...." 354 U.S. at 451, 1 L.Ed.2d at 1482, 77 S.Ct. at ___.

Since 1965, we have under W. Va. Code, 62-1-5, adopted a similar requirement:

"The awful instruments of the criminal law cannot be entrusted to a single functionary. The complicated process of criminal justice is therefore divided into different parts, responsibility for which is separately vested in the various participants upon whom the criminal law relies for its vindication. Legislation such as this, requiring that the police must with reasonable promptness show legal cause for detaining arrested persons, constitutes an important safeguard—not only in assuring protection for the innocent but also in securing conviction of the guilty by methods that commend themselves to a progressive and self-confident society. For this procedural requirement checks resort to those reprehensible practices known as the 'third degree' which, though universally rejected as indefensible, still find their way into use. It aims to avoid all the evil implications of secret interrogation of persons accused of crime."

We spoke to this same problem in *State v. Mason,* ____ W. Va. ____, 249 S.E.2d 793 (1978), where in Syllabus Point 1 we stated:

"The provision of W. Va. Code § 62-1-5 [1965] stating that '[a]n officer making an arrest upon a warrant issued upon a complaint, or any person making an arrest without a warrant for an offense committed in his presence, shall take the arrested person without unnecessary delay before a [magistrate] of the county in which the arrest is made,' is hereafter mandatory."[11]

In *Mason,* we acknowledged that under *State v. Slie,* 158 W. Va. 672, 213 S.E.2d 109 (1975), and *State v. Plantz,* 155 W. Va. 24, 180 S.E.2d 614 (1971), we had rejected the concept

---

"An officer making an arrest under a warrant issued upon a complaint, or any person making an arrest without a warrant for an offense committed in his presence, shall take the arrested person without unnecessary delay before a [magistrate] of the county in which the arrest is made."
This provision has also been carried into Rule 5(a) of the Rules of Criminal Procedure which became effective October 1, 1981.

[11] The pertinent portion of W. Va. Code, 62-1-5, is set out in footnote 10, *supra.*

that the violation of the prompt presentment statute would automatically vitiate a confession given during the defendant's detention before he is taken to a magistrate. We also indicated in *Mason* that the majority rule in other jurisdictions was that an unreasonable delay in taking the defendant before a magistrate after his arrest is treated as one factor in evaluating the voluntariness of a confession.

*Mallory* discussed the purpose of the preliminary appearance before a magistrate: "The next step (after arrest) is to arraign the arrested person before a judicial officer as quickly as possible so that he may be advised of his rights and so that the issue of probable cause may be promptly determined." 354 U.S. at 454, 1 L.Ed.2d at 1483, 77 S.Ct. at ____. In *Gerstein v. Pugh*, 420 U.S. 103, 43 L.Ed.2d 54, 95 S.Ct. 854 (1975), the Supreme Court concluded that some form of probable cause judicial hearing was constitutionally required.[12]

By statute, our mandated preliminary appearance before a magistrate serves other vital purposes in addition to informing the defendant of his right against self-incrimination and his right to counsel. The magistrate is required to "in plain terms inform the defendant of the nature of the complaint against him." W. Va. Code, 62-1-6. Moreover, the defendant must be informed "if the offense is to be presented for indictment, of his right to have a preliminary hearing." W. Va. Code, 62-1-6. The defendant at this initial appearance must be provided "reasonable means to communicate with an attorney or with at least one relative or other person for the purpose of obtaining counsel or arranging bail." W. Va. Code, 62-1-6. Finally, it is at this initial appearance that the

---

[12] *Gerstein's* language is:

"When the stakes are this high, the detached judgment of a neutral magistrate is essential if the Fourth Amendment is to furnish meaningful protection from unfounded interference with liberty. Accordingly, we hold that the Fourth Amendment requires a judicial determination of probable cause as a prerequisite to extended restraint of liberty following arrest." 420 U.S. at 114, 43 L.Ed.2d at 65, 95 S.Ct. at 863.

defendant is entitled to obtain bail.[13] These are substantial rights which the legislature has mandated should be accorded a person who has been arrested. To permit these valuable rights to be denied or substantially postponed by police officials is plainly against the tenor of the legislative will.

It must be stressed that our statutory right to a prompt presentment before a magistrate is not a new concept. The Supreme Court traced the common law origin in *Gerstein, supra,* and stated:

> "This result has historical support in the common law that has guided interpretation of the Fourth Amendment. See Carroll v United States, 267 US 132, 149, 69 L Ed 543, 45 S Ct 280, 39 ALR 790 (1925). At common law it was customary, if not obligatory, for an arrested person to be brought before a justice of the peace shortly after arrest. 2 M. Hale, Pleas of the Crown, 77, 81, 95, 121 (1736); 2 W. Hawkins, Pleas of the Crown 116-117 (4th ed 1762). See also Kurtz v Moffitt, 115 US 487, 498-499, 29 L Ed 458, 6 S Ct 148, 151-52, (1885)." 420 U.S. at 114, 43 L.Ed.2d at 65-66, 95 S.Ct. at 863. (Footnote omitted.)

Courts have recognized that whether there has been an unreasonable delay in taking an arrested person before a magistrate is not subject to any precise time period. Recognition is given to not counting the time consumed in transporting the defendant from where he was apprehended to the magistrate office. Furthermore, it is also recognized that the State can justify delay by showing the necessity of performing customary booking and administrative procedures as outlined in *Johnson v. State,* 384 A.2d 709, 717 (Md. 1978):

> "Examples of necessary delay might include those required: 1) to carry out reasonable routine administrative procedures such as recording, fingerprinting and photographing; 2) to determine whether a charging document should be issued

---

[13] These statutory rights are also embodied in Rule 5 of the Rules of Criminal Procedure effective October 1, 1981.

accusing the arrestee of a crime; 3) to verify the commission of the crimes specified in the charging document; 4) to obtain information likely to be a significant aid in averting harm to persons or loss to property of substantial value; 5) to obtain relevant nontestimonial information likely to be significant in discovering the identity or location of other persons who may have been associated with the arrestee in the commission of the offense for which he was apprehended, or in preventing the loss, alteration or destruction of evidence relating to such crime."[14]

Several courts have viewed the delay in taking the defendant before a magistrate to be a critical factor where it appears that the primary purpose of the delay was to obtain a confession from the defendant. *E.g.*, *People v. White,* 392 Mich. 404, 221 N.W.2d 357 (1974), *cert. denied,* 420 U.S. 912, 42 L.Ed.2d 843, 95 S.Ct. 835 (1975); *Commonwealth v. McGeachy,* 487 Pa. 25, 407 A.2d 1300 (1979); *Briggs v. State,* 76 Wis.2d 313, 251 N.W.2d 12 (1977); *Raigosa v. State,* 562 P.2d 1009 (Wyo. 1977). We believe that this rule comports with the policy behind our prompt presentment statute. Under this rule, the focus is not so much on the length of the dentention but whether the police were primarily using the delay in bringing the defendant before a magistrate to obtain a confession from him.

In the present case, the evidence in regard to the voluntariness of the defendant's confession centers on whether he asked for counsel. The defendant claims that following his arrest he told the police officers that he wanted to speak to "someone" other than them. His mother testified at the *in camera* hearing that the defendant was not well educated and was easily confused. Having some thought that he might be arrested, she instructed him to ask for a lawyer should the police come

---

[14] Obviously, where the arrested person is in need of medical attention, a delay occasioned by this fact cannot be deemed unreasonable. *In Re Walker,* 10 Cal.3d 764, 12 Cal. Rptr. 177, 518 P.2d 1129 (1974); *Green v. State,* 257 Ind. 244, 274 N.E.2d 267 (1971).

for him. The involved officers stated that prior to and after the *Miranda* warnings were given the defendant made no such request. A signed *Miranda* waiver was obtained at 10:52 p.m. before the first statement was taken at around midnight.

The critical events, however, occurred after the first statement since in the first statement the defendant denied any connection to this crime. He also refused the officer's request to take a polygraph test. The police officers at the *in camera* hearing testified that they had further conversations with the defendant after the first statement, part of which were centered on the question of having the defendant take the polygraph test. It was during this time that both officers acknowledge that the defendant asked for counsel. The police officers further stated that the defendant eventually declined the polygraph test and about one and a half hours after the first statement was given, they obtained the second inculpatory statement. Defendant's position at the *in camera* hearing was that he had asked for an attorney on several occasions while he was in custody. A collateral fact of some importance on this issue is the inclusion in the record of the magistrate's preliminary hearing form dated April 23, 1977, showing that the defendant had requested counsel on his initial appearance before a magistrate.

We conclude that under a fair reading of all the evidence brought out at the *in camera* hearing, the State did not bear its burden of proving that the defendant's second confession was voluntary. Specifically, we find that the defendant had requested counsel after his first noninculpatory statement which the police officers admitted had been made at the time they were trying to induce him to undergo a polygraph test. We are also of the view that when there is a dispute over whether the defendant has requested counsel prior to the giving of a confession the trial court is entitled to consider as a factor whether the defendant asked for counsel on being initially taken before a magistrate under W. Va. Code, 61-2-5, and Rule 5(a) of the Rules of Criminal Procedure. Furthermore, an

unjustifiable and unreasonable delay in taking the accused before a magistrate after his initial arrest may in itself be sufficient to render a confession involuntary.

Independent of the failure to terminate the interrogation after the defendant had requested counsel, we conclude that the confession was inadmissible on another ground. The *in camera* hearing discloses that prior to the inculpatory second confession, one of the interrogating officers told the defendant that if he cooperated with them, the officer would give a good recommendation to the probation officer at the time of the presentence investigation.[15] The trial court concluded this statement did not induce the confession citing *State v. Casdorph,* 159 W. Va. 909, 230 S.E.2D 476 (1976), where we stated in Syllabus Point 2:

> "Once a defendant has signed a waiver of his right to remain silent, mere adjurations to confess or unspecific offers of friendship and help, by police officers, do not make a confession involuntary."

In *State ex rel. Burton v. Whyte,* ____ W. Va. ____, 256 S.E.2d 424, 428 (1979), we stated:

> "It should not be inferred that we are sanctioning the practice by law enforcement officials of counseling criminal defendants to tell the truth or

---

[15] The pertinent testimony was:

"Q. Did you advise him that you would make any kind of recommendation if he cooperated?

"A. Yes, the recommendation that I—that could be called a promise. I told him that if he would cooperate with me, then when the probation officer came around about him for recommendations for her pre-sentence investigation, that I would give him a good recommendation. That was the only promise that I made.

\* \* \* \* \* \* \* \* \*

"Q. Officer Stiles, in your telling him, as you say, that you would give him a good recommendation to the probation and parole officer, did you also caution him that the Court sometimes doesn't listen to the recommendations of the probation officer or the parole officer or the prosecuting attorney?

"A. No, I did not."

otherwise urging them to confess. On direct appeal, statements or confessions obtained in this fashion will carry a stigma of unconstitutionality. *State v. Casdorph,* 159 W.Va. 909, 230 S.E.2d 476, 479-80 (1976), perhaps represents the outer boundary of condonation of the practice."

A reading of the facts surrounding the inducement in *Casdorph* demonstrates that the officer made no specific promise to the defendant but did encourage him to cooperate by stating: "I told him it would be easier on him if he would try to cooperate. I advised him if there was anything I could do, I'd be happy to do it." *Casdorph,* at 479.

*Casdorph* cited no authority in its discussion of whether the confession had been induced by the officer's remarks. Its reference to the defendant's signing of a waiver of his rights injects a needless note of confusion into this area of the law. The fact that a defendant waives his right of self-incrimination and right to have counsel, which are the traditional *Miranda* rights, does not mean that thereafter the interrogating officers are free to extract a confession by any manner of inducement or coercion. Courts have recognized that confessions obtained through coercion or inducement are inadmissible even though a *Miranda* waiver has been given. *E.g., M.D.B. v. State,* 311 So.2d 399 (Fla. 1975); *State v. Setzer,* 20 Wash. App. 46, 579 P.2d 957 (1978); *State v. Davis,* 73 Wash.2d 271, 438 P.2d 185 (1968).

In *State v. Parsons,* 108 W. Va. 705, 152 S.E. 745 (1930), we set this principle in its single Syllabus:

"When the representations of one in authority are calculated to foment hope or despair in the mind of the accused to any material degree, and a confession ensues, it cannot be deemed voluntary."

Factually, in *Parsons,* the interrogating officer after indicating to the defendant that they had enough evidence to convict him stated: "I told him he might be able to get into the reform school." *Parsons,* at 746. This Court

concluded that this was a sufficient inducement to render the confession invalid.

In *State v. Mayle,* 108 W. Va. 681, 152 S.E. 633 (1930), we held that an admonition by the interrogating officer that it was best to tell the truth did not constitute a sufficient inducement or threat to render the confession involuntary. *Mayle* relied on our earlier case of *State v. Goldizen,* 93 W. Va. 328, 116 S.E. 687 (1923), where we said that a statement made by a sheriff to the accused that a confederate had confessed and placed the blame on the accused was not a threat, inducement or promise that would render the confession involuntary.

Much the same test stated in *Parsons* was reached in *Bram v. United States,* 168 U.S. 532, 542-43, 42 L.Ed. 568, 573, 18 S.Ct. 183, 187 (1897), where the Supreme Court held that a confession "must not be extracted by any sort of threats or violence, nor obtained by any direct or implied promises, however slight, nor by the exertion of any improper influence." This was confirmed in *Malloy v. Hogan,* 378 U.S. 1, 12 L.Ed.2d 653, 84 S.Ct. 1489 (1966). Most states have adopted a substantially similar test. *E.g., Wallace v. State,* 290 Ala. 201, 275 So.2d 634 (1973); *State v. McFall,* 103 Ariz. 234, 439 P.2d 805 (1968); *Freeman v. State,* 258 Ark. 617, 527 S.W.2d 909 (1975); *People v. Carr,* 8 Cal.3d 287, 104 Cal. Rptr. 705, 502 P.2d 513 (1972); *People v. Scott,* 198 Colo. 371, 600 P.2d 68 (1979); *Turpin v. State,* 400 N.E.2d 1119 (Ind. 1980); *State v. Orscanin,* 283 N.W.2d 897 (Minn. 1979), *cert. denied,* 444 U.S. 970, ___ L.Ed.2d ___, S.Ct. ___ (1980); *State v. Allies,* 606 P.2d 1043 (Mont. 1979); *State v. Fuqua,* 269 N.C. 223, 152 S.E.2d 68 (1967); *Commonwealth v. Eiland,* 450 Pa. 566, 301 A.2d 651 (1973).

In the present case, the officer's statement to the accused went beyond the mere adjuration to tell the truth, which we have accepted in *Mayle, supra,* and which other courts have permitted. *E.g., Crocker v. California,* 357 U.S. 433, 2 L.Ed.2d 1448, 78 S.Ct. 1287 (1958), *reh. denied,* 358 U.S. 858, 3 L.Ed.2d 92, 79 S.Ct. 12; *People v. Grafft,* 61 C.A. 7, 214 P. 273 (1923); *People v. Taylor,* 58 Ill.2d 69, 317 N.E.2d 97 (1974); *Burke v. Warden, Md.*

*Penitentiary*, 239 Md. 701, 211 A.2d 758 (1965); *State v. Fox*, 274 N.C. 277, 163 S.E.2d 492 (1968), *appeal after remand*, 277 N.C. 1, 175 S.E.2d 561 (1970). Here, the interrogating officer's statement was explicit: if the defendant would cooperate, the officer would give the accused a good recommendation to the probation officer. This statement can only be viewed as calculated to foment a hope for leniency in the mind of the accused and under *Parsons* renders the confession inadmissible.

### III.

The defendant's other assignments of error may be briefly settled. He complains that one of the prosecution's witnesses testified that shortly after the incident, the victim stated she had been raped. We have permitted such testimony where the victim's statement is spontaneous and a part of the *res gestae. See State v. Mahramus*, 157 W. Va. 175, 200 S.E.2d 357 (1973), and cases cited therein.

The defendant claims that the indictment did not plainly inform him of the offense charged. It substantially followed the applicable sexual offense statute and we have held that where an indictment substantially follows the language of a statute, it will be deemed sufficient. *State ex rel. Hubbard v. Spillers*, 157 W. Va. 522, 202 S.E.2d 180 (1974); *State v. Nazel*, 109 W. Va. 617, 156 S.E. 45 (1930).

Error is also claimed that the State failed in its proof of the age of the defendant as alleged in the indictment. The defendant's age was shown by information obtained from him at the time he was booked into the Preston County Jail. The defendant's claim is that a birth certificate was needed but the information contained in the booking sheet qualified as a business entry. *Cf. Hill v. Ryerson*, ____ W. Va. ____, 268 S.E.2d 296, 308 (1980).

Finally, the contention is made that the trial court erred in not instructing the jury on first and second degree sexual assault. The trial court refused to instruct because the evidence did not support such charges. This ruling was correct and benefited the defendant and we accordingly find this claim without merit.

For the reason that the defendant's inculpatory confession was involuntary and should not have been admitted, the case is reversed and a new trial is awarded.

*Reversed and remanded.*