375 S.E.2d 805

**STATE of West Virginia**

v.

**James Dale STEWART.**

No. 18194.

Supreme Court of Appeals of West Virginia.

Dec. 9, 1988.

**174**

G. Patrick Stanton, Jr., Stanton & Stanton, Fairmont, for appellant.

Charles G. Brown, III, Atty. Gen., for appellee.

PER CURIAM:

This case is before the Court upon the appeal of James Dale Stewart from the

March 27, 1986, order of the Circuit Court of Marion County which denied the appellant's motion for a new trial. The appellant was convicted of second degree sexual assault by a Marion County jury and sentenced to serve ten to twenty years in the West Virginia Penitentiary at Moundsville. The appellant contends that the trial judge was clearly wrong when, subsequent to an *in camera* hearing, he admitted into evidence the victim's prior tentative identification of the appellant, and the appellant's confession. We hereby affirm.

In the early morning hours of May 30, 1985, a 43-year-old deaf, female newspaper carrier reported that she had been beaten and sexually assaulted while on her delivery route in Fairmont, West Virginia. She wrote in her initial statement, taken within one and one-half hours of the assault that "a small yellow car pulled up beside me and ask[ed] about papers. There [were] two boys in the front of this car and maybe more in the back. The boy that raped me had alcohol on his breath. (This was in the yard of [address of assault location])."

Minutes after the victim reported the assault, the appellant, Dale Stewart, telephoned local police that he had witnessed, from the rear, a man chasing a woman on a street near the location where the victim had reported the assault. The appellant agreed to provide the police with a witness statement. This statement, taken one-half hour after the victim's initial statement, contained a full frontal description of the assailant, and placed the assault some distance from the location noted by the victim. In this witness statement, the appellant did not mention that while in his automobile, he had spoken with the victim just prior to the incident. Above the statement is a notation that the appellant is the owner of a small yellow automobile.

Given the discrepancies in his statement and the color of the appellant's automobile, the officer taking the statement became suspicious and asked the appellant to come with him to the station for an additional statement. The appellant agreed. In route to the station, the officer took Stew-

art to the victim's home for a highly prejudicial showup. Although the showup occurred within three hours of the assault, the victim could not identify the appellant as her assailant. The appellant continued to voluntarily remain with the police for several hours and discussed that which he allegedly witnessed. At no time did he mention that he and a friend had spoken with the victim, while in the appellant's automobile, just prior to the assault.

Police officers informed the appellant that they believed he committed the assault, rather than witnessed it. They also informed him of his constitutional rights and requested that he submit to a blood sampling. Stewart asked the officers to return him to his home. The officers complied. According to the appellant, he discussed matters with his family for approximately fifteen minutes. His family members recommended that the appellant submit to the blood sampling, as they believed it would conclusively prove his innocence. The appellant telephoned the police and asked for a blood sampling.

Two officers returned to pick up the appellant. While in the cruiser, all parties agree that the officers again informed Stewart of his constitutional rights; told him they believed he was the assailant; and told him the penalty for the crime.[1] None of the parties could recall who initiated the discussion.

The only conflicting testimony regarding the events in the cruiser was the appellant's contention that one of the officers offered to speak with the prosecutor on Stewart's behalf for leniency in exchange for a confession. The officers denied that any offer was extended.

Following the exchange, Stewart stated that he raped the victim. He was taken to the station, signed a waiver of his constitutional rights and signed a detailed confession. In his confession, he admitted seeing the victim while in his automobile, briefly talking to her, following her and then sexually assaulting her.

Prior to trial an *in camera* hearing was conducted in which appellant's counsel sought to suppress the confession and showup.

The trial judge ruled that the confession was voluntary. His only concern was the appellant's statement that one of the officers offered to discuss leniency with the prosecuting attorney in exchange for a confession. The officers denied this statement. The trial judge found that after weighing the credibility of the witnesses, he would admit the statement.

The trial judge also ruled that the evidence surrounding the showup was admissible even though the showup was conducted in a highly suggestive fashion. In doing so, the judge noted that the evidence sought to be suppressed was not a positive identification; but rather, the victim's inability to positively identify the appellant as the man who sexually assaulted her three hours earlier.

During the course of the trial the victim never positively identified the appellant as her assailant. She did, however, testify that the young driver of a yellow automobile who spoke with her minutes before the assault was her assailant.

The appellant testified that he was the driver of the yellow automobile who briefly spoke with the victim just prior to the assault. In addition, he testified that following this brief encounter, he had discussed with a friend, who was the passenger in the car, his willingness to rape the victim. He then testified that he changed his mind and shortly thereafter witnessed the assault of the victim by an unknown assailant. Unlike his *in camera* testimony, the appellant further testified that his confession was due to his belief that his friend, the passenger, had committed the assault. The victim testified that the driver, not the passenger, who was present in the courtroom, was her assailant.

Following instructions which included consideration of the voluntariness of the

---

1. Based on the *in camera* testimony of both the appellant and the officers, the statement concerning the penalty may not have been made while the three were in the cruiser, but sometime earlier in the morning.

confession, the jury convicted the appellant of second degree sexual assault, as charged in the indictment.

■ The appellant first contends the trial judge committed reversible error when he admitted the confession into evidence, subject to a jury instruction on voluntariness. Stewart contends that the statement he attributed to the police officer concerning leniency fomented hope and despair in his mind and rendered the confession involuntary. Syl. pt. 7, *State v. Persinger*, 169 W.Va. 121, 286 S.E.2d 261 (1982).

At the trial court level, the standard for determining whether a confession is voluntary has long been that:

'The State must prove, at least by a preponderance of the evidence, that confessions or statements of an accused which amount to admissions of part or all of an offense were voluntary before such may be admitted into the evidence of a criminal case.' Syllabus Point 5, *State v. Starr*, [158] W.Va. [905], 216 S.E.2d 242 (1975).

Syl. pt. 3, *State v. Persinger*, 169 W.Va. 121, 286 S.E.2d 261 (1982).

At the appellate level, the standard for review is stated in syllabus point 7 of *State v. Hickman*, 175 W.Va. 709, 338 S.E.2d 188 (1985):

'A trial court's decision regarding the voluntariness of a confession will not be disturbed unless it is plainly wrong or clearly against the weight of the evidence.' Syllabus Point 3, *State v. Vance*, 162 W.Va. 467, 250 S.E.2d 146 (1978).

In determining whether a statement is voluntary, the trial judge must carefully consider the totality of the circumstances under which the statement was given. *Persinger, supra,* relying upon *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981).

Prior to telephoning the police to voluntarily submit a blood sample, the appellant was home discussing matters with his family. The appellant voluntarily called and asked them to return. When he entered the cruiser, he was again provided his constitutional rights, even though at this point, he was not under arrest.[2] The sole area of concern is the police officer's alleged pointed offers of leniency in exchange for a confession. *See* syl. pt. 7, *Persinger, supra,* and syl. pts. 1 and 2, *State v. Adkison,* 175 W.Va. 706, 338 S.E.2d 185 (1985). After listening to the testimony, the trial judge weighed the credibility of the witnesses and admitted the statement. In comparing the appellant's testimony during the *in camera* hearing and his testimony at trial, we cannot conclude that the trial judge was plainly wrong.[3]

■ The second assignment of error concerns the showup. The trial judge admitted the evidence surrounding the showup, even though he acknowledged that the identification tactic was highly suggestive.

---

**2.** At the point the appellant voluntarily called the police, requested the blood test, and entered the cruiser, he was a suspect. However, the environment was not custodial. Therefore, the officers were not required to inform the appellant of his constitutional rights. *State v. Wyant,* 174 W.Va. 567, 328 S.E.2d 174 (1985); *Oregon v. Mathiason,* 429 U.S. 492, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977). The fact that the officers nonetheless informed him of his rights in this noncustodial atmosphere is a factor in determining the actual voluntariness of the appellant's confession. *Persinger, supra.*

On a related note, when the appellant entered the cruiser, he was not under *de facto* arrest, as prior to the confession the officers did not have probable cause to arrest him. Once the oral confession was made, the appellant was immediately taken to the station for a written waiver of rights and confession. He was then presented to a magistrate. Since the delay in presenting the appellant to a magistrate was merely to reduce the oral confession to writing, it is not a critical factor for determining the actual voluntariness of the confession under *Persinger. State v. Humphrey,* 177 W.Va. 264, 351 S.E.2d 613 (1986).

**3.** During the suppression hearing the appellant testified that one of the officers offered leniency and his fear of a lengthy prison sentence induced the oral admission and subsequent written confession. At trial, the appellant's sixteen-year-old wife first testified that her husband informed her that he and his companion in the automobile, on the morning of the assault, had discussed raping the victim. The appellant then testified that he confessed out of fear that his companion had committed the offense. He also testified before the jury that he voluntarily gave the confession.

It was admitted because the victim, just hours after the assault, could not positively identify the appellant, even in such a prejudicial environment. Pretrial identifications which are the product of suggestive police tactics are removed from the consideration of the jury because there is a likelihood of misidentification. Syl. pt. 3, *State v. Davis*, 176 W.Va. 454, 345 S.E.2d 549 (1986). Given the victim's failure to positively identify the appellant in surroundings which are designed to cause quite a different result, we see no prejudicial error in admitting the evidence, which incidentally was perhaps the strongest evidence in support of the appellant's contention of innocence.

 The appellant further contends that the out-of-court showup tainted the victim's in-court identification of the appellant. The appellant testified that he was the driver of the yellow automobile which stopped the victim minutes prior to the rape. The victim testified in court that the driver of the yellow automobile, who stopped her just prior to the incident was her assailant. Defense counsel did not object to this testimony. *Cf. W.Va. R.Crim.P.* 52(b) and syl. pt. 7, *State v. Davis*, 176 W.Va. 454, 345 S.E.2d 549 (1986). Only through the cumulative testimony of the appellant and the victim was an in-court identification made.

In syllabus point 4 of *State v. Davis*, 176 W.Va. 454, 345 S.E.2d 549 (1986), this Court acknowledged that under certain circumstances an in-court identification is admissible, even after a suggestive out-of-court identification:

'Even though there is an impermissibly suggestive pretrial photographic array, an in-court identification could be made if the identifying witness has a reliable basis for making an identification of the defendant which basis is independent of the tainted pretrial identification procedures.' Syl. pt. 5, *State v. Harless*, [168 W.Va. 707] 285 S.E.2d 461 (W.Va.1981).

In this case the victim's initial statement to the police officers shortly after the assault linked her assailant to the boys in the car. This statement was taken hours before the suggestive showup and therefore establishes an independent basis for her in-court statement that the driver of the automobile assaulted her.[4]

For all the foregoing reasons, this case is affirmed.

AFFIRMED.

---

**4.** Appellant contends that a police officer should not have been permitted to testify that the victim began to cry when she saw the appellant in the police station. The appellant did not object to this testimony; therefore, the alleged error has been waived. Syl. pt. 7, *State v. Davis*, 176 W.Va. 454, 345 S.E.2d 549 (1986).