329 S.E.2d 856

**STATE of West Virginia**

v.

**Steve BURGESS.**

No. 16338.

Supreme Court of Appeals of
West Virginia.

April 18, 1985.

Valentine, Wilson & Partain, Kelly Gilmore Godispoti, Logan, for appellant.

Catherine A. McMullen, Asst. Atty. Gen., Charleston, for appellee.

**PER CURIAM:**

This is an appeal by Steve Burgess from an order of the Circuit Court of Logan

County sentencing him to ten years in the State Penitentiary for aggravated robbery. On appeal, among other points, the defendant contends that the trial court erred in failing to suppress an inculpatory statement which he made prior to trial. After considering the issue, we conclude that the trial court should have suppressed the statement. We, therefore, reverse the decision of the Circuit Court of Logan County and remand this case for a new trial.

On October 12, 1982, shortly before midnight, two white males robbed the Riverside Market in Logan County. The owner of the store and two other persons were present when the robbery occurred. The robbers were wearing stockings over their faces and baseball caps. Another individual witnessed a car leaving the parking lot of the market immediately after the robbery. This witness identified the car as being reddish in color, mid-sized, along the lines of a Torino or Monte Carlo, and as having a defective headlight and a bent license plate.

Within one hour after the robbery had occurred, the Man City Police stopped the defendant's car because they observed that it had a defective headlight and an obscured license plate. The police asked the defendant for identification and, after he presented it, let him go.

Five days later, on October 17, 1982, the West Virginia State Police arrested the defendant between 12:30 and 1:00 a.m. at his home. The arrest was made pursuant to an arrest warrant which the police had obtained shortly before proceeding to the defendant's residence.

Upon arresting the defendant, the police searched him and read him his *Miranda* rights. They then placed him in a police car and transported him to Logan. While enroute to Logan, the police asked the defendant if he had any information which might help them in the Riverside Market case. The defendant made a response which indicated that he had such information and also stated that he did not want to talk about it at the time but would discuss it later. He asked the arresting police officers whether they could help him. The officers stated that while they had no authority to promise anything, "if he cooperated with us, it would look better in the eyes of the court and he could possibly get a lighter sentence." They also said that "the only thing we could promise him was we could do what we could for him, as far as getting a low bond, talking to the magistrate, maybe talking to the judge later on, trying to help him out."

The troopers and the defendant arrived at the Logan State Police barracks at approximately 2:00 a.m. The troopers again advised the defendant of his *Miranda* rights and he signed a waiver of those rights at approximately 2:30 a.m. He then proceeded to give a confession which was typed and which he signed. Shortly thereafter, at approximately 3:00 a.m., the defendant was taken before a magistrate for arraignment.

Prior to trial, the court conducted a hearing on defense counsel's motion to suppress the statement given by the defendant immediately after his arrest. At that hearing, the circumstances surrounding the arrest, the remarks made by the defendant and the waiving of the defendant's *Miranda* rights were introduced into evidence. At the conclusion of the hearing, the court ruled that the statement was admissible into evidence.

In spite of the trial court's ruling that the defendant's statement was admissible into evidence, the State did not introduce it in its case in chief. However, after the defendant denied that he had robbed the Riverside Market, the State introduced the statement to impeach him.

In *State v. Parsons*, 108 W.Va. 705, 152 S.E. 745 (1930), we held that a confession given by a defendant after he had been told by the interrogating officer that he might be able to get into reform school was inadmissible. We stated the following rule in the single Syllabus of that case:

"When the representations of one in authority are calculated to foment hope or despair in the mind of the accused to any material degree, and a confession ensues, it cannot be deemed voluntary."

This Syllabus was quoted with approval in *State v. Persinger*, 169 W.Va. 121, 286 S.E.2d 261, 272 (1982), where interrogating officers indicated to the defendant that if he cooperated with them, they would give a good recommendation to the probation officer at the time of the presentence investigation. We noted that most jurisdictions have adopted a rule similar to that of *Parsons*. The *Parsons* rule is equivalent to the rule established in *Bram v. United States*, 168 U.S. 532, 542–43, 18 S.Ct. 183, 187, 42 L.Ed. 568, 573 (1897), where the United States Supreme Court held that a confession "must not be extracted by any sort of threats or violence, nor obtained by any direct or implied promises, however slight, nor by the exertion of any improper influence."

In *Persinger*, we concluded that the confession was invalid and stated that:

"[T]he interrogating officer's statement was explicit: if the defendant would cooperate, the officer would give the accused a good recommendation to the probation officer. This statement can only be viewed as calculated to foment a hope for leniency in the mind of the accused and under *Parsons* renders the confession inadmissible." 169 W.Va. at (121), 286 S.E.2d at 273.

We believe that the remarks in the case before us were also designed to foment hope in the mind of the defendant. The officers, by their own testimony, indicated that if the defendant cooperated, it would look better in the eyes of the court and that as a result he could possibly get a lighter sentence. They also indicated that they might talk to the judge later and try to help the defendant. We are of the view that under the rule set forth in the single Syllabus of *Parsons*, the confession which ensued as a result of the officers' remarks cannot be deemed voluntary and the trial court should have suppressed it.[1]

The State argues that even if the statement were involuntarily given, it was used only for impeachment purposes and that under Syllabus Point 1 of *State v. Goff*, 169 W.Va. 778, 289 S.E.2d 473 (1982), it was admissible for impeachment purposes:

" 'Where a person who has been accused of committing a crime makes a voluntary statement that is inadmissible as evidence in the State's case in chief because the statement was made after the accused had requested a lawyer, the statement may be admissible solely for impeachment purposes when the accused takes the stand at his trial and offers testimony contradicting the prior voluntary statement....' Syllabus Point 4, in part, *State v. Goodmon*, 170 W.Va. 123, 290 S.E.2d 260 (1981)."

In *Goff*, we examined at some length the distinction made by the United States Supreme Court between a confession that is rendered involuntary because there has been a violation of the defendant's rights as set forth in *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and a confession that is not the product of the defendant's freewill because it has been obtained through coercion or inducement. In the first situation, under *Harris v. New York*, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971), the confession cannot be used in the state's case in chief; but, if the defendant takes the stand, the confession can then be used to impeach him. Where, however, the confession is not the product of the defendant's freewill, it cannot be used for any purpose under *New Jersey v. Portash*, 440 U.S. 450, 99 S.Ct. 1292, 59 L.Ed.2d 501 (1979), and *Mincey v. Arizona*, 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978).

From the text of *Goff*, it is clear that Syllabus Point 1 dealt with a confession that was rendered involuntary because the defendant's *Miranda* rights had been violated. This rule is not applicable to the present case because there was no *Miranda* violation, but instead there was a confession induced by the officers' prom-

---

1. We note that the recent decision of the United States Supreme Court in *Oregon v. Elstad,* 470 U.S. 298, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985), does not impact in this area. It dealt with an incriminating statement given without *Miranda* warnings that was held not to infect a subsequent written confession obtained after full *Miranda* warnings had been given and a signed written waiver obtained.

ises. The confession was consequently not a product of the defendant's freewill and should not have been admitted for any purpose, as we stated in Syllabus Point 2 of *Goff*:

"A confession that has been found to be involuntary in the sense that it was not the product of the freewill of the defendant cannot be used by the State for any purpose at trial."

Under the foregoing law, the Circuit Court of Logan County committed reversible error when it allowed the State to introduce the defendant's confession for impeachment purposes.

█ In addition to the foregoing assignment of error, the defendant also contends that the trial court erred in failing to continue the case, in making certain evidentiary and instructional rulings, and in failing to relieve defense counsel because of a conflict in interest. Inasmuch as the defendant is entitled to a new trial, we are of the view that it is unnecessary to discuss these points.[2]

The judgment of the Circuit Court of Logan County is for the reasons stated reversed, and this case is remanded for a new trial.

Reversed and Remanded.

---

2. The defendant claims that the court erred in refusing to grant a continuance when a witness whom he had subpoenaed failed to appear and when the State called "surprise" witnesses. On retrial, the defendant will again have an opportunity to subpoena witnesses, and he has now learned of the content of the "surprise" witnesses' testimony. The defendant also argues that the court erred in allowing the prosecutor to ask leading questions. These can be rephrased on the retrial. The defendant contends that the court erred in admitting the testimony of two inmates who stated that he had told them that he had committed a robbery somewhere "up toward Man." One of the witnesses, Delmar Lee Simpkins, specifically testified: "He [the defendant] told me about him and his wife knocking down a place toward Man up there. Where I didn't know. He didn't give me the place that he knocked down. We talked a few minutes. He said he used a ladies' silk stocking." The second witness, Delbert Lee Adkins, testified that the defendant had told him that he had robbed a store "between here and Man," that he had worn a silk stocking as a disguise, and that he and his companion had used a shotgun and a pistol. This testimony matched evidence regarding the robbery of the Riverside Market. We believe that it had sufficient materiality and relevancy to support its admission. *See State v. Kinney*, 26 W.Va. 141 (1885). He argues that the court should have relieved defense counsel because of a conflict in interest. The court relieved defense counsel of representation in another case and thus removed the conflict. We do not perceive that this point has merit, particularly in view of the retrial. Lastly, the defendant claims that the court erred in making rulings on certain instructions. Those instructions involved the confession which was introduced into evidence. We have ruled that the confession should have been suppressed, and, therefore, it will be inadmissible on retrial. This point is now moot.