338 S.E.2d 185

**STATE of West Virginia**

v.

**Paulmer Lee ADKISON, Jr.**

**No. 16242.**

Supreme Court of Appeals of West Virginia.

Dec. 12, 1985.

Susan H. Hewman, Ikner & Hewman, Marlinton, for appellant.

Charlie Brown, Atty. Gen., J. Bradley Russell, Asst. Atty. Gen., Charleston, for appellee.

PER CURIAM:

The defendant, Paulmer Lee Adkison, Jr., was convicted by a jury of second degree murder in the Circuit Court of Pocahontas County in 1983. His primary contention on appeal is that the trial court

erred in permitting the State to introduce an incriminating statement that was allegedly induced by promises of leniency by law enforcement officials. He asserts that gruesome photographs having no probative value were erroneously admitted into evidence. He also argues that the trial court committed reversible error by not excluding testimony about the condition of the victim's body because its marginal relevance was outweighed by its prejudice. Finding the defendant's assignments of error to be without merit, we affirm.

■ The defendant in contending that his statement was involuntary and should have been suppressed relies on the general principle expressed in the Syllabus of *State v. Parsons*, 108 W.Va. 705, 15 S.E. 745 (1930):

"When the representations of one in authority are calculated to foment hope or despair in the mind of the accused to any material degree, and a confession ensues, it cannot be deemed voluntary."

In *Parsons*, the defendant confessed after being advised that he might be able to get into reform school. The defendant also cites *State v. Persinger*, 169 W.Va. 121, 286 S.E.2d 261 (1982), where we reviewed the law in this area in some detail and held that the defendant's confession was rendered inadmissible by the interrogating officer's explicit promise that if the defendant would cooperate, he would give a good recommendation to the probation authorities.

We begin by observing that the scope of our review over purely factual determinations, whether made in a civil proceeding or in the context of a suppression hearing in a criminal case, is narrow. Syllabus Points 2 and 3 of *State v. Vance*, 162 W.Va. 467, 250 S.E.2d 146 (1978), reflect, albeit from a broader legal perspective, the limited extent of appellate scrutiny:

"2. It is a well-established rule of appellate review in this state that a trial court has wide discretion in regard to the admissibility of confessions and ordinarily this discretion will not be disturbed on review.

"3. A trial court's decision regarding the voluntariness of a confession will not be disturbed unless it is plainly wrong or clearly against the weight of the evidence."

*See also State v. Mitter*, 169 W.Va. 652, 659, 289 S.E.2d 457, 462 (1982).

The trial court judge in denying the defendant's motion to suppress his written statement concluded that the State had met its burden of showing by a preponderance of the evidence that the statement was voluntarily and intelligently made. He expressly found that none of the officers had made any promises to the defendant and that the defendant had acknowledged the officers told him they could not make him any promises.

The defendant testified at the suppression hearing that he was induced to give the confession because one of the interrogating officers, Trooper Fred Dickinson, told him that if he cooperated he would probably get a lighter sentence and that he, Trooper Dickinson, would go to "bat" for him by speaking to the prosecuting attorney.

■ The defendant both on direct and during cross-examination, however, conceded that Trooper Dickinson told him he could not promise him anything. Significantly, the defendant also stated that because of his prior experience with the criminal law, and plea bargaining in particular, he knew that regardless of the trooper's actions, the final sentencing decision would be up to the trial court judge.

Trooper Dickinson denied making any promises to the defendant with regard to contacting the prosecutor. This was supported by the two other officers, although it was admitted by at least one of the officers that a statement was made that if the defendant cooperated things would go easier with him.

The trial court's findings that no promises were made to the defendant and that the defendant understood that the interrogating police officers lacked the authority to make any promises as to sentencing, clearly distinguishes this case from *Persinger* and our most recent case, *State v. Burgess*, 174 W.Va. 784, 329 S.E.2d 856

(1985). In *Burgess,* the police officers, among other things, told the defendant they might talk to the judge later and try to help the defendant. A short time later, the defendant agreed to give a statement and signed a waiver of his *Miranda* rights.

 We have examined the four color photographs objected to by the defendant and agree with the trial court that they are not gruesome under the standards announced in *State v. Rowe,* 163 W.Va. 593, 259 S.E.2d 26 (1979), and elaborated on in *State v. Clawson,* 165 W.Va. 588, 270 S.E.2d 659 (1980). In Syllabus Point 6 of *State v. Buck,* 170 W.Va. 428, 294 S.E.2d 281 (1982), we held:

> "In order for photographs to come within our gruesome photograph rule established in *State v. Rowe,* [163 W.Va. 593,] 259 S.E.2d 26 (1979), there must be an initial finding that they are gruesome."

The photographs involved here are small Polaroid-type snapshots depicting what the authorities found as they unearthed the victim's body. The first of the photographs objected to, taken shortly after they had begun to dig, shows a small portion of the victim's blue trousers. The second photograph reveals the victim's boots and pants up to about the knees. The third one portrays a plastic hip socket, while the fourth shows a portion of the victim's skull. None of the photographs depict blood and gore. *See State v. Haddox,* 166 W.Va. 630, 276 S.E.2d 788 (1981).

The defendant's final assignment of error is that two of the State's witnesses were permitted to testify that the victim's body separated while being moved to the burial site and was buried in two pieces by the defendant and his codefendant. The defendant contends that the probative value of this evidence was outweighed by its alleged prejudicial effect.

 The evidence indicates that the victim was brutally beaten to death with a tire tool. The question was who did it—the defendant or his codefendant. Each testified against the other. The codefendant described the circumstances surrounding the burial of the body and mentioned the fact that the body had been buried in two pieces. This fact was corroborated by one of the troopers who helped exhume the body and was in contradiction to the defendant's story that the body was buried in one piece.

The trial judge in permitting this evidence directed the State not to dwell on the condition of the victim's body and the State complied with this admonition. Under the circumstances of this case, we do not find this to be reversible error.

For the reasons stated above, we affirm the judgment of the Circuit Court of Pocahontas County.

Affirmed.