366 S.E.2d 750

**STATE of West Virginia**

v.

**John RANDLE, Jr.**

No. 17252.

Supreme Court of Appeals of West Virginia.

Feb. 25, 1988.

---

Robert F. Cohen, Jr., Cohen, Abate & Cohen, Fairmont, for John Randle, Jr.

J. Montgomery Brown, P.A., Fairmont, for State.

PER CURIAM:

The defendant, John Randle, Jr., was convicted of first degree murder by a Marion County Circuit Court jury in November, 1985. Among his assignments of error, he contends the circuit court improperly ruled that his confession was "voluntary" and, therefore, admissible for impeachment pur-

poses. We agree, and reverse and remand for a new trial.

## I.

At 6:00 o'clock, a.m., on November 10, 1982, the body of Ivan B. Hardway was discovered on a roadway in Fairmont, West Virginia. A chisel and a long wooden handle, each splattered with blood, were lying within ten feet of the body. Mr. Hardway had sustained over thirty jagged incisional wounds to the head and to the thumb of the right hand, which the State pathologist determined had been inflicted with the chisel. There were also bludgeon-type wounds to the head consistent with the wooden handle.

Two aspects of the murder investigation led the police to single out the defendant as the principal suspect. First, one or more persons interviewed by the police stated that the defendant had admitted participation in the killing. Second, physical evidence linked the defendant to the crime scene. Latent fingerprints were observed on a pick-up truck registered to Mr. Hardway and parked a short distance from the body. The prints were lifted, photographed, and transmitted to a fingerprint examiner. The chisel and handle, which bore faint finger impressions in the blood, were also transmitted. Two of the fingerprints obtained from the truck were thereafter identified as the defendant's. The remaining prints and the impressions on the weapons were unidentifiable.

On November 23, 1982, Chief Wayne Stutler and Theodore Offutt, Fairmont police officers, interviewed the defendant at a jail in Mercer County, Pennsylvania, where he was held on unrelated charges. The defendant was initially uncooperative and invoked his Fifth Amendment privilege, but the officers did not suspend their interrogation. They assured the defendant they were "willing to help [him]," and at one point represented they would "talk to the Judge" if he would confess. The defendant was told that his fingerprints were "all over the place," including on one of the murder weapons. A confession, the officers said, could "mean the difference between manslaughter and premediated [sic] murder." Eventually, the defendant admitted killing Mr. Hardway, but explained that the killing occurred during an attempted robbery. After the confession, the defendant was returned to West Virginia and indicted for murder in March, 1983.

The defendant moved to suppress the confession and a hearing on the motion was held on August 12, 1983. In an opinion dated August 25, 1983, the circuit court ruled that the confession was inadmissible in the State's case due to a *Miranda* violation.[1] However, in view of the totality of the circumstances, the court determined the statement was "voluntary" and, therefore, admissible for the limited purpose of impeachment.

Trial began on December 13, 1983. The record reveals, upon an avowal by defense counsel, that two witnesses were prepared to testify that on the night of the murder the defendant was at the home of a cousin in Fairmont. On the second day of trial the State moved to exclude all alibi witnesses because the defendant had not responded to the State's demand for a notice of alibi.[2] The exclusion motion was orally

1. The transcript of the confession discloses that the defendant repeatedly advised the police officers: "I don't want to talk to you all." We have, on numerous occasions, stated that:

"Once a person under interrogation has exercised the right to remain silent guaranteed by *W.Va. Const.* art. III § 5, and *U.S. Const.* amend. V, the police must scrupulously honor that privilege. The failure to do so renders subsequent statements inadmissible at trial." Syllabus Point 3, *State v. Rissler*, 165 W.Va. 640, 270 S.E.2d 778 (1980).

2. Rule 12.1(a) of the West Virginia Rules of Criminal Procedure provides:

"*Notice by Defendant.* Upon written demand of the attorney for the state stating the time, date and place at which the alleged offense was committed, the defendant shall serve within 10 days, or at such different time as the court may direct, upon the attorney for the state a written notice of his intention to offer a defense of alibi. Such notice by the defendant shall state the specific place or places at which the defendant claims to have been at the time of the alleged offense and the names and addresses of the witnesses upon whom he intends to rely to establish such alibi."

granted. The defendant subsequently attempted to offer an alibi witness, but the court sustained an objection by the State and advised the jury to disregard the testimony.[3] The defendant did not testify. On December 15, 1983, the jury returned a verdict of guilty without a recommendation of mercy and the defendant appealed.[4]

## II.

■ The issue we address is whether the defendant's confession was involuntary, such that it was inadmissible for purposes of impeachment. As we explained more fully in *State v. Goff*, 169 W.Va. 778, 289 S.E.2d 473 (1982), examination of a confession involves two distinct voluntariness inquiries. Where a confession is obtained in violation of *Miranda*, it is involuntary *in law* and is inadmissible in the State's case. The confession may, however, be used to impeach the defendant's trial testimony, provided it was not the product of improper coercion. We stated the applicable rule in Syllabus Point 4 of *State v. Goodmon*, 170 W.Va. 123, 290 S.E.2d 260 (1981):

> "Where a person who has been accused of committing a crime makes a voluntary statement that is inadmissible as evidence in the State's case in chief because the statement was made after the accused had requested a lawyer, the statement may be admissible solely for impeachment purposes when the accused takes the stand at his trial and offers testimony contradicting the prior voluntary statement knowing that such prior voluntary statement is inadmissible as evidence in the State's case in chief."

■ Where physical or mental coercion in the interrogation process operates to override the defendant's freewill, a confession is involuntary *in fact* and cannot be used for any purpose. This principle was summarized in Syllabus Point 2 of *Goff*:

> "A confession that has been found to be involuntary in the sense that it was not the product of the freewill of the defendant cannot be used by the State for any purpose at trial."

One of the many factors which may negative a defendant's freewill, and thereby render a confession involuntary, is the use of promises and psychological ploys to foment hope or despair. Several cases are particularly illustrative of the problem. *State v. Parsons*, 108 W.Va. 705, 152 S.E. 745 (1930), involved a juvenile who was arrested on a charge of breaking and entering. During interrogation, a police officer informed Mr. Parsons that he might be placed in a reform school if he cooperated and provided a confession. We held that the resulting confession was inadmissible, and concluded in the single Syllabus:

> "When the representations of one in authority are calculated to foment hope or despair in the mind of the accused to any material degree, and a confession ensues, it cannot be deemed voluntary."

In *State v. Persinger*, 169 W.Va. 121, 286 S.E.2d 261 (1982), we utilized the *Parsons* Syllabus and reviewed a number of our prior cases. The defendant in *Persinger* had been promised by the interrogating officer that if he cooperated with him, the officer would give a good recommendation to the probation officer. We found this

3. In another assignment of error, the defendant attacks the court's exclusion order as a violation of the Compulsory Process Clause of the Sixth Amendment. *See State v. Glover*, 177 W.Va. 650, 655 n. 8, 355 S.E.2d 631, 636 n. 8 (1987). Since we reverse the conviction on other grounds, we do not reach the Sixth Amendment issue. The United States Supreme Court in *Taylor v. Illinois*, 484 U.S. 400, 108 S.Ct. 646, 98 L.Ed.2d 798 (1988), recently resolved this issue. It held that the Compulsory Process Clause does not create an absolute bar to the preclusion of a defense witness as a sanction for violating the alibi discovery rule. In creating a balancing

test to be applied, the importance of an adequate fact record surrounding the violation was stressed. The Supreme Court upheld the sanction in *Taylor*, and emphasized the willful nature of the violation.

4. The defendant's original petition for appeal was denied on March 5, 1985, and he thereupon brought a petition for a writ of habeas corpus. Upon agreement by the State and defense attorney, the defendant was resentenced and again petitioned for appeal. This second appeal was granted on July 2, 1986, and the habeas petition was voluntarily dismissed.

sufficient to bar the use of the confession for any purpose.

We also applied the *Parsons* Syllabus in *State v. Burgess*, 174 W.Va. 784, 329 S.E.2d 856 (1985). Mr. Burgess was arrested for aggravated robbery and, while in custody, inquired whether the officers could "help" him. The officers told him that his cooperation "could possibly get him a lighter sentence," and promised they would assist him to obtain a low bail and talk to the judge. Mr. Burgess thereupon confessed and the confession was admitted at trial to impeach his testimony. On appeal, we determined that the statements by the police fomented the hope of favorable treatment and rendered the confession involuntary.

We believe the police conduct here was more egregious than in *Parsons, Persinger,* or *Burgess.* The defendant was repeatedly assured of the officers' willingness to "help" him, and even to speak with the judge on his behalf. The physical evidence at the crime scene was blatantly misrepresented.[5] The possibility of a lighter sentence was discussed, and the officers strongly suggested that a confession could result in a plea of manslaughter.

■ The transcript and tape recording of the confession also reveal that the method of questioning employed was highly suggestive. When the defendant gave an exculpatory statement, the officers simply dismissed it as a "lie." The defendant was urged to "tell us what you told [other state witnesses]." The officers proposed that the killing might have resulted from an aborted robbery, and said they understood if it "got out of hand." The questioning was punctuated with long pauses and audible signs, the plain purpose of which was to overwhelm the defendant's will to resist. We are persuaded that the defendant's freewill was overborne, and that the circuit court erred in holding that the confession could be used for impeachment.

■ We also conclude that a reversal of the conviction is warranted. As we pointed out above, the defendant did not testify and the confession, therefore, was not admitted into evidence. However, the court's improper ruling deterred the defendant from testifying and severely prejudiced his case. While the State does not raise this point, it is clear that where a violation of the defendant's right against self-incrimination has occurred and a court rules that evidence obtained thereby may be utilized, the defendant's failure to testify does not waive the constitutional violation.

The United States Supreme Court in *New Jersey v. Portash,* 440 U.S. 450, 99 S.Ct. 1292, 59 L.Ed.2d 501 (1979), addressed a situation in which the defendant had been compelled to testify before a grand jury after being granted immunity from prosecution. Thereafter, he was indicted and sought to prohibit the use of his grand jury testimony.

The trial court ruled that if he took the stand, the prior testimony could be used to cross-examine him. Faced with the adverse ruling, the defendant did not testify. Upon conviction, he claimed that his compelled testimony before the grand jury could not be used against him. However, the State argued the defendant had waived this ground by not testifying, as the compelled testimony was never introduced into evidence.

The Supreme Court concluded without much discussion that a waiver did not occur and relied on *Brooks v. Tennessee,* 406 U.S. 605, 92 S.Ct. 1891, 32 L.Ed.2d 358 (1972). There it held unconstitutional a statute that required the defendant to be his own first witness, otherwise he could not testify. The Supreme Court in *Portash,* 440 U.S. at 455–56, 99 S.Ct. at 1295, 59 L.Ed.2d at 508, summarized *Brooks:* "Because the rule imposed a penalty on the right to remain silent, the Court found that his constitu-

---

5. As indicated above, the police exaggerated the number of fingerprints at the scene, and falsely stated that the defendant's prints were found on the weapons. Courts have considered misrepresentations or trickery to obtain a confession as a factor which bears upon its validity under the totality of circumstances test. *E.g., People v. Freeman,* 668 P.2d 1371 (Colo.1983); *Gaspard v. State,* 387 So.2d 1016 (Fla.App.1980); *State v. Reid,* 394 N.W.2d 399 (Iowa 1986); *State v. Jackson,* 308 N.C. 549, 304 S.E.2d 134 (1983); *State v. Caffrey,* 332 N.W.2d 269 (S.D.1983).

tional rights had been infringed even though he had never taken the stand." [6]

We reached a similar result in *State v. Payne,* 167 W.Va. 252, 280 S.E.2d 72 (1981). There, a defendant in a rape case moved in limine to prevent the use of prior criminal convictions to impeach his testimony. This motion was denied and the defendant declined to take the stand. We held on appeal that the evidentiary ruling was erroneous, and proceeded to inquire whether the error was prejudicial. Since the defendant was denied an opportunity to controvert damaging identification testimony by testifying on his own behalf, the conviction was reversed. *See also State v. Green,* 163 W.Va. 681, 260 S.E.2d 257 (1979) (defendant deterred from testifying by gross misstatement as to proper scope of impeachment). Other jurisdictions have likewise reversed a conviction where an improper ruling on the scope of impeachment has deterred the defendant from testifying, to the prejudice of the defendant's case. *E.g., Langley v. United States,* 515 A.2d 729 (D.C.App.1986); *United States v. Dorsey,* 192 U.S.App.D.C. 313, 591 F.2d 922 (1978); *United States v. Smith,* 179 U.S.App.D.C. 162, 551 F.2d 348 (1976); *People v. Pickett,* 163 Cal.App.3d 1042, 210 Cal.Rptr. 85 (1985); *Apodaca v. People,* 712 P.2d 467 (Colo.1985).

We believe that here, as in *Payne,* prejudice has been adequately demonstrated. The defendant attempted to present an alibi defense, but the witnesses who would have supported the alibi were excluded by court order. His own testimony would have established an alibi defense, but the court's erroneous ruling with regard to the use of his confession to impeach him deterred him from taking the stand. Under the foregoing law, we conclude that there was prejudice.

For the reasons discussed above, the judgment of the Circuit Court of Marion County is reversed and the case is remanded for a new trial.

Reversed and Remanded.

---

**6.** The Supreme Court in note 5 of *Portash,* 440 U.S. at 456, 99 S.Ct. at 1295, 59 L.Ed.2d at 508, added this comment:

"A similar situation existed in *Wardius v. Oregon,* 412 U.S. 470, 93 S.Ct. 2208, 37 L.Ed.2d 82 [1973]. The Court held in that case that state notice-of-alibi requirements could be enforced only if the State provided reciprocal discovery rights for the defendant.

The defendant in that case had not given a notice of alibi. The State argued that he could not assert his constitutional claim, because he should have given his notice of alibi and then argued that the State had to grant him reciprocal discovery. The Court rejected that argument, and held that he need not give notice to raise his constitutional claim."