410 S.E.2d 269

**STATE of West Virginia, Appellee,**

v.

**James William SMITH, Appellant.**

**No. 19958.**

Supreme Court of Appeals of
West Virginia.

Submitted Sept. 18, 1991.

Decided Oct. 16, 1991.

Joseph A. Colosi, Welch, for appellant.

Mario J. Palumbo, Atty. Gen. and James P. Carbone, Asst. Atty. Gen., Charleston, for appellee.

NEELY, Justice:

A jury convicted James William Smith of second-degree murder of Paul Thompson, and the judge sentenced him to five to eighteen years in prison. Mr. Smith ap-pealed to this Court alleging that involun-tary confessions were used at trial and that the assistance of his counsel was ineffec-tive.[1] We were unable to resolve a number of issues raised by Mr. Smith in his appeal because of an insufficient factual record. Consequently, we remanded the case for an evidentiary hearing. On remand, the Cir-cuit Court of McDowell County determined that the State proved by a preponderance of the evidence that the appellant's state-ments were voluntary and that the appel-lant did not show that the assistance of his counsel was ineffective. Mr. Smith now appeals from these findings of the circuit court. We reverse and remand for a new trial consistent with this opinion.

## I.

On 16 February 1986 at approximately 10:30 p.m., Paul Thompson was killed when he was struck by a train, after he had been left unconscious and bleeding on the rail-road tracks near Hensley, West Virginia. During his preliminary investigation, Trooper Marvin Smoot discovered that Mr. Thompson had spent part of the evening drinking with Mr. Smith. At approximate-ly midnight, Trooper Smoot went to Mr. Smith's home to ask him questions about Mr. Thompson's death. While questioning Mr. Smith, Trooper Smoot noticed what he thought were blood stains on Mr. Smith's pants and boots, and he asked Mr. Smith to hand over the pants. Mr. Smith refused. After talking with Trooper Smoot, Mr. Smith went into his home, changed his clothes, and came back out with the inten-tion of visiting his in-laws who lived across the public highway. Trooper Smoot wait-ed, and after Mr. Smith walked across the public road, arrested him for public intoxi-cation. Trooper Smoot then took Mr. Smith to the police barracks where Mr. Smith was "processed" for approximately seven hours before appearing in front of a magistrate.

After Mr. Smith appeared before a mag-istrate, he was taken to the Welch Emer-

1. The evidence as it was presented at the origi-nal trial and this Court's orders for remand are laid out in *State v. Smith*, 181 W.Va. 700, 384 S.E.2d 145 (1989) (*Smith I*).

gency Hospital. The hospital records show that Mr. Smith had a raised bruise on the lower part of his chest and a ruptured left eardrum. The records also indicate that Mr. Smith complained of soreness and explained to the doctor that he had been hit and kicked by the police officers. After treating Mr. Smith, the hospital physician, Dr. Erme, referred Mr. Smith to Dr. Robert Miller.

Dr. Miller, a Board Certified Otolaryngologist, testified about Mr. Smith's ear injury. In his deposition, Dr. Miller stated that Mr. Smith's left ear had been "freshly" ruptured at the time of his visit, 21 February 1986. Dr. Miller also testified that the rupture was consistent with Mr. Smith's story—that one of the officers had "hit him with an open fist." Finally, Dr. Miller said that the injury was *not* consistent with the State's explanation that the rupture was caused by an ear infection.

Mr. Smith's parents testified that they saw the appellant shortly after he was released by the police and that he was bleeding from the mouth, that he had dried blood in his nose, and that his hair came out when it was combed. The appellant testified that he was beaten by Trooper Smoot, Trooper Steve Cox, and a civilian friend of Trooper Smoot, Doug West. The appellant claims that he asked to see a lawyer numerous times but that the police officers refused to allow him to call one. The officers denied using force against appellant.

During appellant's "processing," he gave two statements to the police officers. In one of those statements, he admitted to being an accomplice to Mr. Thompson's murder. He claims, however, that he gave these statements only to make the police officers stop beating him. After Mr. Smith was released, Trooper Smoot returned with him to his trailer and accompanied him inside. Mr. Smith then gave his blood-stained trousers to Trooper Smoot.[2]

**II.**

■ Ordinarily we will not inquire into tactical trial decisions by lawyers in criminal cases because lawyers face difficult choices during trials. We will not find ineffective assistance because 20/20 hindsight shows a lawyer's choice to have been the wrong one. This case, however, involves *no* such choice. Mr. Smith's trial lawyer did not move to suppress the blood-stained pants at trial. The State suggests that this was an appropriate tactical decision. Huh? The State claims that Mr. Smith's trial lawyer wanted to have the blood-stained pants admitted so that he could use them as part of an elaborate explanation of the evening's events, one part of which was the victim's being struck by his wife, causing a nosebleed that dripped on appellant's pants.

■ In Syllabus Point 19, *State v. Thomas*, 157 W.Va. 640, 203 S.E.2d 445 (1974), we stated:

In the determination of a claim that an accused was prejudiced by ineffective assistance of counsel violative of Article III, Section 14 of the *West Virginia Constitution* and the Sixth Amendment to the *United States Constitution,* courts should measure and compare the questioned counsel's performance by whether he exhibited the normal and customary degree of skill possessed by attorneys who are reasonably knowledgeable of criminal law, except that proved counsel error which does not affect the outcome of the case, will be regarded as harmless error.

We find that a lawyer with the normal and customary degree of skill would have moved to suppress and that in this case the lawyer's failure to do so was not harmless.[3]

**III.**

■ The trial court also found that Mr. Smith's confession was voluntary, and that

---

2. Trooper Smoot testified that he did not think he needed to get a warrant for the pants because of Mr. Smith's "voluntariness." While Trooper Smoot does know the proper buzz words to use, we question how "voluntary" Mr. Smith's release of the pants could have been after seven hours of "processing."

3. We will address the State's contention that the pants were appropriately admitted into evidence *infra* p. 36.

even if it was coerced, its use at trial was harmless error. Courts do not allow the use of coerced confessions in trials. We have not developed such a rule to protect those guilty of crimes but to protect those innocent of crimes who may be wrongly suspected. If coerced strongly enough, even innocent people will confess to crimes.

Much of the evidence offered in the circuit court was provided by interested parties. The police officers had strong incentives not to admit beating the defendant, and the defendant had an even stronger incentive to claim that the police officers did beat him. The objective evidence, however, strongly supports Mr. Smith's claim. Mr. Smith was uninjured when taken into custody at midnight, but the next morning he was suffering from cuts, bruises, and a perforated eardrum.

The State claims that whatever the police officers may have done to coerce Mr. Smith into making his statements does not matter because these statements were used only minimally at trial. Although coerced statements may not be used by the prosecutor in his case-in-chief, this Court has allowed the use of "involuntary" statements to impeach a defendant's false or inconsistent testimony. *State v. Goodmon*, 170 W.Va. 123, 290 S.E.2d 260 (1981). However, *Goodmon* involved a situation clearly different from the one we have before us. The statements in *Goodmon* were "involuntary" because they were made after the defendant had requested a lawyer, *not* because the police had physically coerced the defendant into making the statements.

■ As we noted in *State v. Randle*, 179 W.Va. 242, 366 S.E.2d 750 (1988), confessions may be involuntary in law or involuntary in fact. Confessions that are involuntary in law are not admissible as part of the State's case-in-chief, but may be used to impeach the defendant's testimony. We allow such statements to be used for impeachment because the fact that a statement was obtained in violation of a technical legal requirement does not make it an unreliable representation of the facts. A confession that is involuntary in fact, on the other hand, is inherently unreliable. A confession under torture is worthless for all purposes.

■ As we stated in Syllabus Point 2 of *State v. Goff*, 169 W.Va. 778, 289 S.E.2d 473 (1982):

> A confession that has been found to be involuntary in the sense that it was not the product of the freewill of the defendant cannot be used by the State for any purpose at trial.

We find the statements that Mr. Smith made after he was taken into custody were not the product of his free will and therefore should not have been used at trial.[4]

■ Similarly, the consent exception to the 4th Amendment of the *U.S. Constitution* implies a voluntary consent. *State v. Williams*, 162 W.Va. 309, 249 S.E.2d 758 (1978). Consent to a search or seizure, not given as a product of the defendant's free will, is not a valid exception to the prohibition in *U.S. Const.* amend. IV against unreasonable searches and seizures. After seven hours in police custody, Mr. Smith did not want to be "processed" further, and, therefore, gave the pants to Trooper Smoot.[5] In no true sense of the word was Mr. Smith's consent voluntary.

### IV.

For the foregoing reasons the judgment of the Circuit Court of McDowell County is reversed and this case is remanded for a new trial consistent with this opinion.

Reversed and Remanded.

---

4. Because of the inherently coerced nature of Mr. Smith's statement, we have not addressed the violation of the prompt presentment statute. However, it is apparent that if Mr. Smith had been promptly presented, as is required by *W.Va.Code* § 62–1–5 [1965], many problems would have been avoided.

5. The State has also conceded that the seizure clearly cannot be justified as one under the "plain view" exception to the 4th Amendment. Appellee's brief at 36.