# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**FILED**

November 21, 2014

**RORY L. PERRY II, CLERK**
**SUPREME COURT OF APPEALS**
**OF WEST VIRGINIA**

**vs)  No. 13-0556** (Webster County 12-F-41)

**Rodrick Lusk,**
**Defendant Below, Petitioner**

## MEMORANDUM DECISION

Petitioner Rodrick Lusk, by counsel Timothy V. Gentilozzi, appeals the April 22, 2013, order of the Circuit Court of Webster County denying his motions[1] for a new trial and imposing an effective sentence of not less than eight nor more that thirty-eight years in prison following petitioner's convictions on four drug charges. Respondent State of West Virginia, by counsel, Julie A. Warren, filed a response, to which petitioner filed a reply.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law or prejudicial error with respect to the denial of petitioner's motions for a new trial. However, we find that the circuit court erred with respect to the recidivist enhancement of petitioner's sentence. For these reasons, under Rule 21 of the Rules of Appellate Procedure, a memorandum decision affirming the circuit court's order in part, reversing in part, and remanding the matter to the circuit court for resentencing is appropriate.

### Facts and Procedural History

On May 3, 2012, petitioner was arrested on four drug-related charges stemming from a controlled transaction involving a confidential informant. The transaction was initiated with the assistance of the Webster County Drug Task Force. The transaction was established by the informant placing a call to a cellular telephone registered to petitioner; however, the informant spoke with an unidentified female. The informant agreed to purchase one morphine pill in exchange for sixty dollars. The task force then transported the informant to petitioner's residence and gave him sixty dollars in three marked twenty-dollar bills for use in the transaction. The

---

[1] Petitioner filed two motions for a new trial, the first on March 24, 2013, and the second on March 28, 2013.

1

transaction occurred in petitioner's residence with him present; however, according to the informant, petitioner was not active in the transaction.[2]

After the transaction was completed, the officers knocked on the back door of the residence and entered after hearing petitioner say "come on in."[3] When the officers entered the residence, petitioner and Crystal Chaffin were present. One of the officers saw three twenty-dollar bills on a table and saw petitioner drop a baggie containing four pills onto the floor, which petitioner attempted to hide with his feet. The initial search of the home yielded the marked bills from the controlled transaction and a bag of pills taken from petitioner containing one morphine pill, a Schedule II narcotic, and three zolpidem pills, a Schedule IV narcotic. After this initial warrantless search, petitioner signed a consent form for an additional search, which yielded a notebook believed to be a "drug ledger," spoons with burn marks on them, hypodermic needles, pill crushers, and additional cash.

Petitioner was indicted on four charges: (1) possession with intent to deliver a Controlled Schedule II substance; (2) possession with intent to deliver a Controlled Schedule IV substance; (3) delivery of a Controlled Schedule II substance; and (4) conspiracy. Petitioner filed a motion seeking suppression of the evidence seized as a result of the warrantless search. A hearing on petitioner's motion was held on December 19, 2012, at which time the officer testified that, when he knocked on the door of the residence, petitioner responded by saying "come on in." The officer also testified that the marked bills were on the coffee table in plain view when he entered, and that he witnessed petitioner take a baggie of pills from his back pocket, throw them down, and cover them with his foot. The circuit court denied petitioner's motion to suppress based on petitioner inviting the officers into his residence.

On January 4, 2013, the court held a hearing on the State's motion to dismiss the charges against Crystal Chaffin, petitioner's co-defendant. The State's motion was based on the informant's testimony that he did not recognize the person he had spoken with on the phone when he arranged the deal.[4] The State also relied upon recorded telephone conversations taken place while Chaffin was incarcerated that allegedly created doubt as to her involvement in the

---

[2] Petitioner states that the informant was hitch-hiking earlier in the day, picked up by the police, and found to have a morphine pill in his possession. The informant provided vague testimony as to what happened in the residence as a result of his own morphine usage that day. The informant indicated that the pills were lying on a table when he entered the home; that he put the money on the table; and that he took the pill. He also testified that petitioner and Crystal Chaffin were present in the residence. Ms. Chaffin was made a co-defendant with petitioner.

[3] Petitioner describes this tactic as a "knock and talk" investigation. Petitioner notes that only when the police employ "overbearing tactics," such as "drawn weapons, raised voices, or coercive demands," have their actions been faulted. *See U.S. v. Thomas,* 430 F.3d 274, 277-78 (6th Cir. 2005).

[4] The circuit court noted that the informant appeared to be under the influence during his testimony. After the hearing, the informant tested positive for methamphetamine, THC, oxycontin, and benzodiazepines.

transaction. The circuit court noted that Chaffin was also involved in an abuse and neglect proceeding arising from the drug transaction, resulting in the termination of her parental rights. Further, the circuit court questioned why the State would move to dismiss Chaffin's charges with no new evidence having come to light. Ultimately, the circuit court found that the facts should be established by a jury and denied the State's motion to dismiss the charges against Chaffin.[5]

Petitioner filed another pre-trial motion, wherein he requested that the jury be informed by testimony or instruction that "the State believes another female, not being Crystal Chaffin, arranged the drug deal on the telephone." Petitioner argued such information created a "reasonable doubt that Crystal Chaffin was the person on the phone" arranging the transaction giving rise to petitioner's charges. Petitioner represents that his motion was denied. Petitioner also filed a motion to compel discovery, in which he sought an order directing the State to investigate Shannon Ellison as the person who arranged the transaction and to disclose the information produced by that investigation.[6] The circuit court denied that motion as well.

The matter proceeded to a jury trial on February 20, 2013, and petitioner was convicted on all four counts in the indictment. Thereafter, the State filed a recidivist information against petitioner based on a prior felony conviction, to which petitioner admitted. Based on the recidivist information, the circuit court doubled the minimum sentence that petitioner was to serve for each of petitioner's four convictions. Specifically, by order entered on April 22, 2013, the circuit court sentenced petitioner to not less than two nor more than fifteen years in prison for possession with intent to deliver a Schedule II substance; not less than two nor more than three years in prison for possession with intent to deliver a Schedule IV substance; not less than two nor more than fifteen years for delivery of a Schedule II controlled substance; and not less than two nor more than five years in prison for conspiracy. The circuit court ordered the sentences to be served consecutively, resulting in an aggregate sentence of eight to thirty-eight years of incarceration. The court also denied petitioner's post-trial motions for a new trial and his motion for reconsideration of his sentence.[7] Petitioner now appeals to this Court.

**Discussion**

---

[5] The circuit court also denied the State's request to continue Ms. Chaffin's trial date to allow additional time to locate a potential witness, Shannon Ellison. The State represented that Ms. Ellison may have been the person responsible for setting up the transaction; however, Ms. Chaffin was present at the time the informant entered the residence and purchased the drugs. The informant did not see any other females in the home. However, the circuit court granted petitioner's request for a continuance of his trial; following an additional hearing, granted Ms. Chaffin's motion to sever; and found good cause to continue her trial.

[6] Petitioner states that Ellison is an inmate in the State of Oklahoma.

[7] The appendix record reflects that the circuit court denied petitioner's motion for reconsideration of his sentence by order entered September 10, 2013.

Petitioner raises six assignments of error on appeal. First, he argues that the circuit court erred in failing to suppress the evidence obtained pursuant to the warrantless search of his residence. We review a circuit court's ruling on motion to suppress evidence as follows:

> By employing a two-tier standard, we first review a circuit court's findings of fact when ruling on a motion to suppress evidence under the clearly erroneous standard. Second, we review *de novo* questions of law and the circuit court's ultimate conclusion as to the constitutionality of the law enforcement action. Under the clearly erroneous standard, a circuit court's decision ordinarily will be affirmed unless it is unsupported by substantial evidence; based on an erroneous interpretation of applicable law; or, in light of the entire record, this Court is left with a firm and definite conviction that a mistake has been made. *See State v. Stuart,* 192 W.Va. 428, 452 S.E.2d 886, 891 (1994).When we review the denial of a motion to suppress, we consider the evidence in the light most favorable to the prosecution.

*State v. Lilly,* 194 W.Va. 595, 600, 461 S.E.2d 101, 106 (1995) (footnotes omitted).

Petitioner contends that he did not knowingly invite the officers into the residence; therefore, his subsequent consent to search was not valid. Petitioner asserts that pursuant to his rights under the Fourth Amendment to the United States Constitution, the evidence was illegally obtained and should have been excluded. We disagree. This Court has noted that "both the State and Federal Constitutions prohibit only unreasonable searches and seizures and there are still numerous situations in which a search and seizure warrant is not needed." *State v. Angel,* 154 W.Va. 615, 628, 177 S.E.2d 562, 569-70 (1970). Among those situations not requiring a search warrant are "searches and seizures made that have been consented to." *Id.* at 628, 177 S.E.2d at 570. However, the consent to search must be voluntary and "a product of the defendant's free will." Syl. Pt. 5, in part, *State v. Smith,* 186 W.Va. 33, 410 S.E.2d 269 (1991).

In the present case, the record shows that the officer testified during the suppression hearing that he knocked on petitioner's door and identified himself as being from the sheriff's department. Petitioner, in response, then stated "come on in." There is no evidence that the officer drew his weapon or exercised any overbearing tactics that would have rendered the invitation to enter the residence involuntary. The officer performed an initial pat down, noted three twenty-dollar bills in plain view on the coffee table, observed petitioner drop pills on the floor, and attempt to cover them with his foot. The officer did not pick up the bills or the pills until he secured petitioner's voluntary and written consent to search the residence.

As support for his argument, petitioner cites *Johnson v. U.S.*, 333 U.S. 10 (1948), in which the United State Supreme Court held that even though occupants of a hotel room invited officers in and allowed them to search the room, there was no intentional waiver of rights, rather it was merely a submission to the officers' authority. However, the present case is easily distinguished. In *Johnson,* the officer told the defendant "I want you to consider yourself under arrest because we are going to search the room" after the officer smelled opium. 333 U.S. at 12. Here, petitioner presented no evidence to suggest that he invited the officer into his home out of "submission to authority," but rather, he argued that he refused the officer's entrance into the

4

home. Second, according to the officer's testimony, petitioner expressly invited him to "come on in," and it was not subtle acquiescence. Finally, the officer did not inform petitioner he was under arrest or told that his home would be searched. Instead, the officer obtained the voluntary written consent from petitioner.

The record shows that the circuit court observed all of the testimony at the suppression hearing, including that of petitioner. When viewed in the light most favorable to the prosecution, we cannot find that the circuit court erred in ruling that petitioner knowingly and voluntarily invited the officer into the residence and consented to the search. Therefore, we uphold the circuit court's ruling on petitioner's suppression motion.

Petitioner also argues that the evidence should have been suppressed as it was "fruit of the poisonous tree." However, this doctrine renders evidence inadmissible only where "[e]vidence which is located by the police as a result of information and leads [were] obtained from illegally seized evidence[.]" *State v. Stone,* 165 W.Va. 266, 272, 268 S.E.2d 50, 54 (1980). In other words, "absent a constitutional violation, the 'fruits of the poisonous tree' doctrine has no applicability." *State v. Bradshaw,* 193 W.Va. 519, 540, 457 S.E.2d 456, 477 (1995). In this case, for the reasons stated above, there was no constitutional violation as petitioner invited the officer into his residence and then voluntarily signed a written consent to search. The circuit court properly determined that the evidence was admissible.

Petitioner's second assignment of error is that the circuit court erred by failing to compel the State to take a statement from Shannon Ellison, the female who allegedly arranged the transaction over the telephone with the informant. Petitioner asserts that failing to investigate Ellison was tantamount to failing to disclose exculpatory evidence, at least with respect to petitioner's conspiracy charge, and possibly the entire case. However, The State cannot be compelled to disclose evidence it does not have. The West Virginia Rules of Criminal Procedure do not require the State to track down and/or research certain evidence on petitioner's behalf. Rule 16(a)(1)(C) describes the State's discovery duties as follows:

> Upon request of the defendant, the state shall permit the defendant to inspect and copy or photograph books, papers, documents, photographs, tangible objects, buildings or places, or copies or portions thereof, which are within the possession, custody and control of the state, and which are material to the preparation of the defense or are intended for use by the state as evidence in chief at the trial, or were obtained from or belong to the defendant.

The record indicates that the State was not in possession of Shannon Ellison's statement and petitioner has no basis to demand that the State obtain it. For one, petitioner could have obtained her statement himself, as he claimed to know that she was incarcerated in the State of Oklahoma and even knew her inmate number. Second, as the State points out, Ellison's statement, if she were to admit to setting up the transaction with the informant, would likely have only been exculpatory as to Chaffin's conspiracy charge; the State would have gone forward with the conspiracy charge against petitioner regardless. Accordingly, we reject petitioner's second assignment of error.

5

Third, petitioner argues that the circuit court should have dismissed the charges against Chaffin for lack of evidence. Petitioner posits that the failure to dismiss Chaffin's charges led to her refusal to testify in his defense; rather, she asserted her Fifth Amendment right to not incriminate herself. Had she testified in petitioner's trial, petitioner contends that she would have swayed the jury in his favor at least with respect to the conspiracy. However, the fact that Chaffin exercised her constitutional right to not incriminate herself because of pending charges in a separate case does not provide petitioner with standing to assign error in his appeal.

In his fourth assignment of error, petitioner similarly argues that he should have been permitted to tell the jury that the State sought to dismiss Chaffin's charges. We disagree. We find no abuse of discretion by the circuit court when it refused to allow petitioner to introduce evidence related to the State's unsuccessful motion to dismiss Chaffin's charges. *See State v. Swims,* 212 W.Va. 263, 269-70, 569 S.E.2d 784, 790-91 (2002) ("[T]he admission of evidence . . . [is] committed to the discretion of the trial court[,]" and [this Court] "will review evidentiary . . . rulings of the circuit court under an abuse of discretion standard.") Here, the circuit court properly ruled that the prejudicial effect of such evidence outweighed any relevancy to petitioner's charges. Therefore, we see no error in this regard.

Petitioner's fifth assignment of error is that the circuit court erred by denying his request for a continuance of his trial, while it granted Chaffin's request. Petitioner complains that it was arbitrary and capricious and irrational to continue one case, but not the other. This Court has stated that "'[i]t is well settled as a general rule that the question of continuance is in the sound discretion of the trial court, which will not be reviewed by the appellate court, except in cases it clearly appears that such discretion has been abused.' Syl. Pt. 1, *Levy v. Scottish Union & Nat'l Ins. Co.,* 58 W.Va. 546, 52 S.E. 449 (1905)." Syl. Pt. 2, *Nutter v. Maynard,* 183 W.Va. 247, 395 S.E.2d 491 (1990). The circuit court noted that it severed petitioner and Chaffin's cases and continued Chaffin's case because "I can't use the same jury panel to try the defendants, so it is not an arbitrary and capricious act by the court." Under these circumstances, the decision to continue Chaffin's case after severing the two cases was not an abuse of discretion.

Second, there is no record of the circuit court denying petitioner's motion for continuance. The State requested a continuance in Chaffin's case, which was denied on January 4, 2013. Insofar as petitioner challenges that denial of the State's motion, we find that such is not a proper basis for appeal. However, the record shows that petitioner moved for a continuance of his case on January 8, 2013, and that the court granted that request, continuing his trial until January 24, 2013. Accordingly, we reject petitioner's fifth assignment of error.

Petitioner's final assignment of error challenges his sentence. Specifically, petitioner argues that under the relevant provisions of the recidivist statute, West Virginia Code § 61-11-18(a),[8] the circuit court improperly enhanced all four of his indeterminate sentences, rather than

---

[8] West Virginia Code § 61-11-18(a) provides, in part, as follows:

 [W]hen any person is convicted of an offense and is subject to confinement in the state correctional facility therefor, and it is determined, as provided in section nineteen [§ 61-11-19] of this article, that such person had been before convicted

6

only one. We agree with petitioner.[9] This Court has held that "[i]n the absence of some express language in our recidivist statute, W.Va. Code § 61-11-18, authorizing criminal convictions returned against the defendant at the same time to be separately enhanced by a prior felony, it may not be done and only one enhancement is permissible." Syl, *Turner v. Holland,* 175 W.Va. 202, 332 S.E.2d 164 (1985). The April 22, 2013, Sentencing Order in the present case does not comply with *Turner* because the circuit court doubled the minimum term to be served for all four of petitioner's indeterminate sentences. Petitioner's four convictions must be treated as one for purposes of the recidivist statute. Accordingly, only one of the convictions may be subject to the recidivist enhancement. Petitioner must be resentenced.

For the foregoing reasons, we affirm the denial of petitioner's motions for new trial. However, we reverse the circuit court's sentencing order insofar as it imposes the recidivist enhancement on all four of petitioner's convictions. This matter shall be remanded to the circuit court for resentencing in accordance with this decision.

Affirmed in part, reversed in part, and remanded.

**ISSUED:** November 21, 2014

**CONCURRED IN BY:**

Chief Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Allen H. Loughry II

---

in the United States of a crime punishable by confinement in a penitentiary, the court shall, if the sentence to be imposed is for a definite term of years, add five years to the time for which the person is or would be otherwise sentenced. Whenever in such case the court imposes an indeterminate sentence, the minimum term shall be twice the term of years otherwise provided for under such sentence.

[9] We note that the State concedes error on this point.