498 S.E.2d 716

**STATE of West Virginia, Appellee,**

v.

**Jamie Lamont LITTLE, Appellant.**

No. 23896.

Supreme Court of Appeals of West Virginia.

Submitted Oct. 14, 1997.

Decided Dec. 4, 1997.

---

Frances C. Whiteman, Fairmont, for Appellant.

Dawn E. Warfield, Deputy Attorney General, Charleston, for Appellee.

PER CURIAM:[1]

Jamie Lamont Little, the defendant, appeals his conviction by a jury of second degree murder in the Circuit Court of Marion County. Mr. Little argues that his confession was involuntary and that he was denied a speedy trial. Because we find no reversible error, we affirm the conviction.

## I.

Sometime prior to September 7, 1994, Jamie Lamont Little, the defendant, and Alphonso Lee Woods were involved in a drug transaction which resulted in Mr. Woods receiving aspirin instead of the cocaine which he had sought to purchase from the defendant. Following this transaction, Mr. Woods began harassing the defendant by threatening and stalking him. On the evening of September 7, 1994, at approximately 8:30 p.m., Mr. Woods was sitting in his truck when the defendant walked past his vehicle. Mr. Woods began exiting his vehicle and the defendant shot a pistol three times in Woods' direction, killing him with the third shot. The defendant then fled the area.

Upon learning that he had killed Mr. Woods, the defendant surrendered to police on the street in front of the Fairmont Police Station at approximately 9:45 p.m. the same evening. While being taken into the building, the defendant was accompanied by Police Chief Theodore A. Offutt. There was conflicting testimony offered at trial concerning whether the defendant made a spontaneous statement at that time to Chief Offutt concerning his actions, but both sides agree that the defendant was given his Miranda[2]

rights while going into the building. At 9:52 p.m. Chief Offutt placed the defendant in an interview room and tape-recorded his reading to the defendant of his Miranda rights. The defendant then indicated that he did not wish to make a statement. Chief Offutt next advised the defendant that he would be charged with homicide, turned off the tape player, and left the defendant in the room with the defendant's mother and brother.

Following the conversation with his family members, the defendant indicated that he wished to make a statement. Testimony was offered at trial that the defendant at that time made a statement "off the record," to which Chief Offutt replied that if the defendant was telling the truth, his actions could be construed as self-defense. At 10:18 p.m. Chief Offutt turned on the tape machine and again read the defendant his Miranda rights. The defendant then admitted to shooting the victim, Mr. Woods.

The following morning the defendant was charged with first degree murder and was arraigned before a magistrate. A jury trial was held in April of 1995 and the defendant was found guilty of second degree murder with a special finding that the defendant used a firearm in the commission of the offense. The defendant was sentenced to 40 years in the state penitentiary. This appeal followed.

## II.

The defendant argues that his statements made after the shooting were involuntary due to the failure of the police to promptly present him to a magistrate and the conduct of the police during the delay.

■ As we have stated previously, "[a] trial court's decision regarding the voluntariness of a confession will not be disturbed

---

1. We point out that a *per curiam* opinion is not legal precedent. *See Lieving v. Hadley*, 188 W.Va. 197, 201 n. 4, 423 S.E.2d 600, 604 n. 4. (1992) ("*Per curiam* opinions ... are used to decide only the specific case before the Court; everything in a *per curiam* opinion beyond the syllabus point is merely *obiter dicta....* Other courts, such as many of the United States Circuit Courts of Appeals, have gone to non-published (not-to-be-cited) opinions to deal with similar

cases. We do not have such a specific practice, but instead use published *per curiam* opinions. However, if rules of law or accepted ways of doing things are to be changed, then this Court will do so in a signed opinion, not a *per curiam* opinion.")

2. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

unless it is plainly wrong or clearly against the weight of the evidence." Syllabus Point 3, *State v. Vance*, 162 W.Va. 467, 250 S.E.2d 146 (1978). *In accord*, Syllabus Point 7, *State v. Hickman*, 175 W.Va. 709, 338 S.E.2d 188 (1985); Syllabus Point 2, *State v. Stewart*, 180 W.Va. 173, 375 S.E.2d 805 (1988); Syllabus Point 1, *State v. Farley*, 192 W.Va. 247, 452 S.E.2d 50 (1994).

■ In Syllabus Point 2 of *Farley, supra*, we set out our standard of review:

This Court is constitutionally obligated to give plenary, independent, and *de novo* review to the ultimate question of whether a particular confession is voluntary and whether the lower court applied the correct legal standard in making its determination. The holdings of prior West Virginia cases suggesting deference in this area continue, but that deference is limited to factual findings as opposed to legal conclusions.

■ To determine if a confession is given voluntarily, a trial court must examine the totality of the surrounding circumstances in which the statement is given. Syllabus Point 7, *State v. Farley*, 192 W.Va. 247, 452 S.E.2d 50 (1994). In the present case, no threats were made to the defendant, and when the defendant indicated that he wished to remain silent, the interview was discontinued. Twenty-five minutes later, after talking to family members, the defendant said he wished to give a statement. We see no evidence that the few minutes which the defendant spent alone with his family was coercive conduct by the police. The evidence clearly shows that the defendant voluntarily began speaking with the police after his dis-

cussion with his family and therefore voluntarily waived his right to remain silent.

■ We are also not persuaded that the defendant's will was overborne because of the slight delay in presenting him to the magistrate. *W.Va.Code*, 62–1–5(a)(1) [1997] requires that a prisoner be brought promptly before a magistrate after being arrested so that the accused's rights might be protected.[3] A delay in taking the defendant before the magistrate might be a critical factor in determining if there is coercion if it appears that the primary purpose of the delay was to obtain a confession from the defendant. However, in the instant case the delay, if any, was created to allow the defendant an opportunity to meet with his family. It was the defendant who chose what time in the evening to turn himself in and it was the defendant who decided to meet with his family.[4]

We find that neither the police interrogation of the defendant nor the delay in presenting him before a magistrate was coercive conduct; therefore, the defendant's arguments that his statements should not have been admitted into evidence are without merit.

■ Finally, the defendant argues that the circuit court erred in granting a continuance to the State when the defendant was in jail without bond having been set in violation of *W.Va.Code*, 62–3–1 [1981].[5] Essentially, the defendant argues that he was denied his constitutional right to a speedy trial.

An indictment in this case was returned by the grand jury during the October 1994 Term. The trial was set within that first term and scheduled for December 7, 1994.

---

3. *W.Va.Code*, 62–1–5(a)(1) [1997] states:

An officer making an arrest under a warrant issued upon a complaint, or any person making an arrest without a warrant for an offense committed in his presence or as otherwise authorized by law, shall take the arrested person without unnecessary delay before a magistrate of the county where the arrest is made.

4. This Court also takes note that the Marion County magistrates do arraignments up until 10:00 p.m. and anyone arrested after that time is held in the county jail until the following morning. Even if the defendant opted not to meet

with his family after his meeting with Chief Offutt at 9:52, it would be questionable whether there was sufficient time that night, following being processed at the jail, to be arraigned.

5. *W.Va.Code*, 62–3–1 [1981] states, in pertinent part:

When an indictment is found in any county, against a person for a felony or misdemeanor, the accused, if in custody, or if he appear in discharge of his recognizance, or voluntarily, shall, unless good cause be shown for a continuance, be tried at the same term . . . .

Following the indictment the defendant filed a Notice of Intention to Rely upon Defense of Mental Condition. During a status conference on November 21, 1994, the State was provided a copy of the defendant's psychiatric report. The defendant indicated that he would not be relying on an insanity defense, but rather would use the psychiatrist's report to question whether the defendant had the requisite mental intent necessary for murder. With the trial only two weeks away, the State was required to ask for a continuance so that it could obtain an expert to testify on the State's behalf.[6] The circuit court judge granted the continuance to the following term, and the trial was conducted in April 1995.

■ This Court has held:

The determination of what is good cause, pursuant to *W.Va.Code*, 62–3–1, for a continuance of a trial beyond the term of indictment is in the sound discretion of the trial court, and when good cause is determined a trial court may, pursuant to *W.Va. Code*, 62–3–1, grant a continuance of a trial beyond the term of indictment at the request of either the prosecutor of defense, or upon the court's own motion.

Syllabus Point 2, *State ex rel. Shorter v. Hey*, 170 W.Va. 249, 294 S.E.2d 51 (1981).

In this case, the defendant waited until two weeks prior to trial to provide a copy of his expert's report to the State and during the course of that status conference agreed that the State should be granted the opportunity to obtain an expert and to research the evidence provided to it by the defense. We find, therefore, that there existed good cause to grant the continuance and that the circuit court did not abuse its discretion in granting the continuance.

Accordingly, we reject the defendant's arguments that his confession should have been

suppressed and that he was denied his right to a speedy trial.

Affirmed.

---

**6.** The defendant argues that since the State did not use an expert during the course of the trial, their continuance request was invalid. However, they overlook the fact that the State could have used that time to obtain an expert who could then review the defendant's report and give an opinion to the State whether the defendant had a colorable argument. Simply because the State did not put a psychiatrist on the stand does not mean that the State did not utilize the time granted by the continuance to consult with an expert. ·